182 N.J. Super. 510 (1982)
442 A.2d 1016
BETTY L. PERNA AND THOMAS R. PERNA, JR., PLAINTIFFS-APPELLANTS,
v.
MICHAEL J. PIROZZI, M.D.; ANTHONY DEL GAIZO, M.D.; PATRICK N. CICCONE, M.D.; AND MANSOOR KARAMOOZ, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1981.
Decided January 11, 1982.
*511 Before Judges BISCHOFF, KING and POLOW.
William O. Barnes, Jr., argued the cause for appellants.
John L. Shanahan argued the cause for respondents (Jung, Wilson, McGuire & Shanahan, attorneys; John L. Shanahan, Clifford H. Lange and J. Anthony Manger of Manger, Kalison & Murphy, of counsel and on the brief).
The opinion of the court was delivered by KING, J.A.D.
This is an appeal from a verdict of no cause for action in a medical malpractice case. Plaintiffs-appellants raise several claims of legal error. They challenge R. 4:21  "Professional Liability Claims Against Members of Medical Profession; Procedure," claiming "it contravenes the constitutional guarantees of equal protection; ... violates the constitutional mandate of separation of powers; ... [and] constitutes a denial of due process." They also claim error in certain exclusionary evidentiary rulings and in the supplemental charge to the jury. We treat the final point first.
On May 8, 1977 plaintiff Thomas Perna was admitted by a family physician to St. Joseph's Hospital. A urological consultation was sought with Dr. Michael Pirozzi, who practiced in a *512 medical group of urological surgeons with Dr. Del Gaizo and Dr. Ciccone. Dr. Pirozzi initially had seen Thomas Perna in his office for a bladder infection during the mid-1960s. After admission to St. Joseph's Hospital in 1977 and upon examination and consultation an operation for kidney stones (right pyelolithotomy) was recommended.
A written consent to operate was executed by Thomas Perna in the sole presence of a urological resident, Dr. Karamooz, on May 17. The written consent form authorized surgery by Dr. Pirozzi alone; it did not mention the other members of his group, Dr. Del Gaizo or Dr. Ciccone. Dr. Karamooz did not testify at trial. The operation was performed on May 18, 1977 by Dr. Del Gaizo, assisted by Dr. Ciccone.
Post-surgical complications resulted which ultimately led to this lawsuit ending in a verdict for defendants. Plaintiffs alleged medical bills of $27,000 and substantial residual disability attributable to defendants' malpractice. During the pendency of the malpractice suit a R. 4:21 panel hearing was held; a finding adverse to plaintiffs on the issue of negligence was returned by the panel and was reported to the jury. The alleged informed consent issue was not submitted to the R. 4:21 panel.
During the eight-day trial plaintiffs contended that the three defendants were negligent during the performance of the original surgery of May 18, during the follow-up surgery of June 24 and during all post-operative care consequent upon those procedures. Plaintiffs further claimed that defendants were guilty of a violation of the doctrine of informed consent because Dr. Pirozzi did not perform the May 18 surgery despite his sole authority to do so. In rejoinder, defendant-doctors contended that actual authority to operate had been extended by implication to all three members of the group; they said there was no understanding that only Dr. Pirozzi could operate but the parties understood that any one of the group could operate assisted by any other. They conceded that the surgery was scheduled and performed on Dr. Pirozzi's day off.
*513 The case was submitted to the jury on two theories of liability: (1) standard medical malpractice  deviation from the applicable standard of care, supported by expert testimony, and (2) lack of informed consent because of the substitution of surgeons  also supported by expert testimony. In summation, plaintiffs' attorney argued that four deviations from standard practice occurred: (1) failure to obtain an informed consent, (2) failure to find an attenuated ureter on May 18, (3) the delay between the two operations, and (4) the failure to splint. As will be seen, the informed consent issue was troublesome to the jury. They appeared to resolve the standard malpractice contentions based on the other three alleged deviations without difficulty.
In the original charge on informed consent the judge said:
In addition to the issues of medical malpractice to which I have just referred, the plaintiff Thomas Perna alleges as still another element of medical malpractice an issue of informed consent; that is, had he known that Dr. Pirozzi would not perform the operation he would not have consented to it. It is the plaintiff's contention that with regard to the first operation of May 18, 1977, he had given his consent to perform that operation to Dr. Pirozzi, the only doctor he knew in the group practice in which that doctor was engaged, that is, he consented to the operation based on his understanding that Dr. Pirozzi would perform it.
Now, Dr. Pirozzi and his colleagues deny that there was any express understanding that Dr. Pirozzi would perform the operation. He asserted and so did his colleagues that the rules followed by his group were that if a request were made for a particular doctor in the group that doctor is so tagged and if no such request is made any two of the group would operate. Dr. Pirozzi further contended that he had no discussion with plaintiff and denies that Mr. Perna ever asked to be his patient alone for the first surgery.
........
This issue of informed consent is an issue that was not considered by the malpractice panel since they deemed it a purely factual issue; that is, an issue of credibility. It is an issue for you the jury to decide based on the law as I will state it to you. I charge you that in the absence of an emergency or of unforeseeable condition arising during surgery, a physician or surgeon before operating on a patient must obtain the consent of the patient. The consent of the patient to be sufficient for the purpose of authorizing a particular surgical procedure must be an informed consent. The question is not what the plaintiff would have decided if properly advised but what a reasonably prudent person in the plaintiff's position would have decided if fully informed. In reaching your *514 decision on this issue you must consider the facts and circumstances that existed at the time the consent was given and may not consider facts or circumstances that came to light thereafter.
Should you determine with regard to the first operation of May 18, 1977, the plaintiff's consent to the operation was based on the fact that Dr. Pirozzi was to perform the operation and that that was his understanding with the doctor and further determine that such failure of informed consent constituted a deviation from accepted medical standards and that if there was such deviation constituting medical malpractice, it was the proximate cause as I will define that term for you of the plaintiff's damages, then you must find for the plaintiff on this issue. However, should you determine that with regard to the first operation of May 18, 1977, there was no understanding that Dr. Pirozzi would perform the operation or that any two members of the group would perform it or that such failure of informed consent was not such deviation from accepted medical standards as to constitute medical malpractice or should you find that such medical malpractice was not a proximate cause as I will define that term for you of the plaintiff's damages, then you must find for the defendants on this issue.
A standard charge on proximate cause was rendered. Neither party objected to submission of the issue of unauthorized surgery to the jury in this form.
Subsequent to the judge's initial charge, the jury presented the following inquiry to the trial judge: "In your charge to the jury with reference to informed consent, is there a basis for malpractice if consent was given to one physician and another operated but no deviation from standard surgical procedures were involved?" The judge responded to the jury's query thus:
Now, I'm going to answer that question only as it relates to the issue of informed consent and, of course, if you are considering the other issues you would still rely on the Court's charge and all that I told you about medical malpractice.
Now, negligence and medical malpractice in a sense are synonymous. I indicated that to you in my charge. There may be negligence or malpractice but nevertheless there is still proof required as to the injuries and damages which would naturally flow from such negligence or malpractice and, if there are no injuries or damages naturally flowing from such malpractice, that is with reference to this particular issue, your verdict would then be as far as this issue is concerned no cause for action. However, if you find that Dr. Pirozzi was guilty of medical malpractice by not operating himself and the damages and injuries were the proximate cause thereof; that is, any damages or injuries were the proximate cause thereof, as I will define that term for you and I had done it once before for you, that is the term proximate cause, then you would proceed to determine the damages resulting as a natural consequence of that malpractice.
Now, proximate cause is defined by proximate cause is meant that the negligence of a defendant was an efficient cause of the injuries and damages; *515 that is, a cause which necessarily sets the other causes in motion and was a substantial factor in bringing the injuries and damages about. It is defined as a cause that naturally and probably lead to and might have been expected to produce the damages and injuries complained of.
Plaintiff's counsel objected in advance to this supplemental charge. He said: "I object strongly to what the Court intends to do. First of all, the question calls for a simple yes or no answer and the answer is yes and I suggest that's all the jury should be told." Further, he stressed that proximate cause should not be recharged because the jury made no such request.
In our opinion, the allegation of performing unauthorized surgery on May 18 by Dr. Del Gaizo was submitted to the jury improperly in the context of the doctrine of informed consent. This doctrine holds that a physician who proposes a medical or surgical procedure is under a duty to explain the procedure and to disclose dangers incident to it so the patient may make an intelligent and informed decision whether to consent. Louisell and Williams, Medical Malpractice, § 22.01 at 594.43 (1980); see Kaplan v. Haines, 96 N.J. Super. 242, 257 (App.Div. 1967), aff'd 51 N.J. 404 (1968). Where exigent circumstances arise and consent to the procedure cannot be obtained, the law supplies the surgeon with implied authority to act in the best interests of the patient. Bennan v. Parsonnet, 83 N.J.L. 20 (Sup.Ct. 1912). But "[s]uch implication affords no license to the surgeon to operate upon a patient against his will or by subterfuge...." Id. at 25. See P. v. Portadin, 179 N.J. Super. 465, 472 (App.Div. 1981). Cf. Mohr v. Williams, 95 Minn. 261, 104 N.W. 12 (Sup.Ct. 1905) (consent not implied).
The doctrine of informed consent has nothing to do with surgical procedures to which informed consent has been obtained, but which are performed by a surgeon other than the doctor specifically authorized to proceed. The legal and medical authorities appear to uniformly agree that where a surgeon operates without any consent he commits an assault and battery upon the patient. Louisell and Williams, supra at § 8.09 at 220. In Schloendorff v. New York Hospital, 211 N.Y. 125, 105 N.E. 92 *516 (1914), then Judge Cardozo of the New York Court of Appeals said:
Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent, commits an assault for which he is liable in damages.... This is true except in cases of emergency where the patient is unconscious and where it is necessary to operate before consent can be obtained. [105 N.E. at 93]
See P. v. Portadin, supra, 179 N.J. Super. at 472.
The Judicial Council of the American Medical Association has expressed this opinion:
The Judicial Council of the AMA has said: "To have another physician operate on one's patient without that patient's consent and without his knowledge of the substitution, is a fraud and deceit and a violation of the basic ethical concept." The basic ethical concept to which the Judicial Council was referring is the patient's right to choose his own physician. It is implicit in this concept that the patient should be permitted to acquiesce in or to refuse to accept any substitution of physician.
........
The patient is entitled to the services of the particular surgeon with whom he contracts. The surgeon, in accepting the patient, obligates himself to utilize his personal talents in the performance of the operation. He cannot delegate to another the duties which he is required to perform personally.
Under the normal and customary arrangement with private patients, and with reference to the usual form of consent to operation, the surgeon is obligated to perform the operation himself, and he may use the services of assisting residents or other assisting surgeons to the extent that the operation reasonably requires the employment of such assistance. If a resident or other physician is to perform the operation under the guidance of the surgeon, it is necessary to make a full disclosure of this fact to the patient, and this should be evidenced by an appropriate statement contained in the consent. ["Questions and Answers," 209 J. of American Med. Ass'n 947-948 (1969)]
The California District Court of Appeals has stated: "It is clear that surgery performed without consent constitutes a battery." Dow v. Kaiser Foundation, 12 Cal. App.3d 488, 90 Cal. Rptr. 747 (1970). See, also, Hundley v. St. Francis Hospital, 161 Cal. App.2d 800, 327 P.2d 131, 135 (D.Ct.App. 1958); Valdez v. Percy, 35 Cal. App.2d 485, 96 P.2d 142, 145 (D.Ct.App. 1939); Mims v. *517 Boland, 110 Ga. App. 477, 138 S.E.2d 902, 906 (App.Ct. 1964).[1] The Supreme Court of Virginia recently made the following statement in a case where the jury could have reasonably found that the patient initially consented to surgery but effectively revoked that consent before the procedure was started.
This case is controlled by those most elementary principles of law which govern an action for assault and battery. "The law is so jealous of the sanctity of the person that the slightest touching of another,... if done in a rude, insolent or angry manner, constitutes a battery for which the law affords redress...." Crosswhite v. Barnes, 139 Va. 471, 477, 124 S.E. 242, 244 (1924). It is well established that, given the proper factual conditions and circumstances, a patient can maintain against a physician an action based on assault and battery for acts arising out of the physician's professional conduct. The relationship between physician and patient is a consensual one and "[a] surgical operation on the body of a person is a technical battery or trespass unless he or some authorized person consented to it." 61 Am.Jur.2d Physicians, Surgeons, Etc. § 155 (1972). An unauthorized operation is a wrongful and unlawful act for which the surgeon will be liable in damages. Consent to an operation may be express, and under some circumstances may be implied or presumed. See 61 Am.Jur.2d Physicians, Surgeons, Etc. § 158 (1972). Such consent to an operation may also be withdrawn, if timely and unequivocally done, thereby subjecting the surgeon to liability for battery if the operation is continued. See Mims v. Boland, 110 Ga. App. 477, 138 S.E.2d 902 (1964). [Pugsley v. Privette, 220 Va. 892, 263 S.E.2d 69, 74 (1980)]
Presiding Judge Brightmire of the Oklahoma Court of Appeals, specially concurring, in a case where plaintiff contended that a transurethral prostectomy was performed by an unauthorized substitute or "ghost surgeon" said:
In this country an individual has a "natural right"  which the law recognizes as a legal right  to determine whether to submit to elective surgery or not, and if he does submit, to choose the surgeon who shall perform it. If a patient consents to a particular operation by a particular surgeon, he has, in effect, entered "into a contract authorizing his physician to operate to the extent of the consent given, but no further." One who operates without consent of the patient commits a wrongful act and is liable therefor in damages. Rolater v. Strain, 39 Okl. 572, 137 P. 96 (1913). The wrongful act renders the one who performs the surgery without consent guilty of a battery and the physician who receives a fee for doing surgery he did not in fact do guilty of obtaining money under false pretenses  a species of fraud and deceit  and breach of contract. [Buie v. Reynolds, 571 P.2d 1230, 1236 (1977)]
*518 For cases involving participation of unauthorized and unlicensed medical personnel in operative procedures, see, e.g., DeMay v. Roberts, 46 Mich. 160, 9 N.W. 146 (Sup.Ct. 1881); People v. Gerhath, 77 App.Div.2d 628, 430 N.Y.S.2d 368 (App.Div. 1980); People v. Smithtown General Hospital, 93 Misc.2d 736, 402 N.Y.S.2d 318 (Sup.Ct. 1978).
For tactical reasons, perhaps fear of a compromised or minimal damage award or loss of insurance coverage, plaintiffs' manifestly competent counsel elected not to proceed on the theory of assault and battery. Neither the complaint, the contentions in the pretrial order nor the requests to charge framed any theory of recovery for intentional tort. Since we conclude that the doctrine of informed consent is a theory of professional liability independent from malpractice, i.e., the negligent deviation from a standard of professional care, any alleged error in explaining the doctrine to the jury in this case was harmless, where informed consent should not have been in the case at all. R. 2:10-2. The jury squarely found against plaintiffs' negligence claim. Of this there is no doubt. Any error in the submission of the doctrine of informed consent to the jury, although provoking understandable confusion for them, was not capable in this context of producing an unjust result and may thus be disregarded. R. 2:10-2.
We conclude with a treatment of the remaining issues. R. 4:21, effective in its present form on September 11, 1978, provides for mandatory pretrial panel review in medical malpractice actions. The panel consists of a lawyer, a doctor and a judge designated by the assignment judge. R. 4:21-4(a). If the panel's findings on malpractice are unanimous, they are "admissible in evidence at trial upon the request of any party to the hearing." R. 4:21-5(e). We reject plaintiff's constitutional attack on R. 4:21 substantially for the reasons expressed at length by Judge Martin in Suchit v. Baxt, 176 N.J. Super. 407 (Law Div. 1980). See, also, Busik v. Levine, 63 N.J. 351, 373 (1973); American Trial Lawyers Ass'n v. N.J. Supreme Court, 126 N.J. Super. 577, 589 (App.Div.), aff'd. 66 N.J. 258 (1974). The *519 procedures in R. 4:21 are "for the common interest of the public, the medical and legal professions in the processing of medical malpractice actions with the view towards discouraging baseless actions and encouraging settlement of these actions based on reasonable medical probability...." R. 4:21-1. As Judge Martin noted in Suchit v. Baxt, supra 176 N.J. Super. at 423 "[a]t least 18 other states have adopted a method of pretrial panel hearing as a mechanism in processing medical malpractice suits." An overwhelming number of courts considering constitutional challenges have found such procedures to be valid. Ibid. See, also, "Report of the Supreme Court Committee on Relations with the Medical Profession," 101 N.J.L.J. 451 (1978); Beatty v. Akron City Hospital, 67 Ohio St.2d 483, 424 N.E.2d 586 (Sup.Ct. 1981); Fein v. Permanente, 175 Cal. Rptr. 177 (D. Ct.App. 1981).
The balance of plaintiffs' contentions which challenge the propriety of the trial judge's evidentiary rulings are clearly without merit and are rejected. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] An attempt to reconcile the theories of informed consent, assault and battery and negligence may be found in Riskin, "Informed Consent; Looking for the Action," 1975 Ill.Law Forum 580 (1975).