DONNA ZIMMERMAN, an Infant, by Her Mother and Natural Guardian, BARBARA ZIMMERMAN, et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant.

First Department, January 25, 1983

**APPEARANCES OF COUNSEL**

*June A. Witterschein* of counsel (*Stephen J. McGrath* with her on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Morton H. Feder* of counsel (*Jeannine A. Broomhall* with him on the brief; *Bases Russo Lawrence Ciovacco Walsh & Feder, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

SILVERMAN, J.

In this case the jury found that there was no informed consent to the surgery performed on the infant plaintiff; the jury awarded the infant plaintiff, Donna Zimmerman $250,000 damages and awarded to the plaintiff mother Barbara Zimmerman for loss of services the sum of $50,000. The Trial Judge thought that the verdict of $250,000 to the infant plaintiff was "shockingly inadequate" and granted that plaintiff's motion for a new trial as to damages only unless defendant consented to increase the verdict of $400,000. The trial court also directed a new trial as to damages only with respect to the plaintiff mother unless that plaintiff consented to a reduction of her verdict to $10,000.

Defendant New York City Health and Hospitals Corporation appeals from the order and interlocutory judgment embodying these determinations.

The surgery was performed by a fourth year resident at the hospital, a chief resident responsible for the care of patients under the supervision of an attending physician, and who also had teaching responsibilities with respect to junior residents and medical students. He had performed some 50 such operations, though none on a precisely similar condition. The Trial Judge submitted a number of special questions to the jury; and in connection with the fourth such question his instructions could have been interpreted as suggesting a failure to state explicitly details as to the surgeon's training and experience was a factor that might properly be considered in determining whether the mother's consent to the operation was an informed consent. We think that in the circumstances of the present case that was improper.

But the Trial Judge also submitted other questions, not affected by this discussion, to which the jury's answers were to the effect that Donna's mother did not have the mental capacity to consent to the operation; that the doc-

tors to whom that consent was given knew or should have known of that incapacity; and that the doctors had failed to explain to the mother the material risks of the operation, the risks of not operating, and the alternatives, if any, to surgery. These answers support the verdict as to liability on the ground of lack of informed consent.

■ However, we do not agree that the $250,000 verdict in favor of the infant plaintiff was so "shockingly inadequate" as to justify the Trial Judge's interference with the jury's assessment.

The infant plaintiff, Donna, was born in 1966. The surgery here complained of was performed in 1974 when Donna was about eight years old. The child was suffering from a condition called spondylolisthesis, which causes destruction of ligaments and produces pressure on nerve structures because of an improper alignment of the vertebrae of the spinal column. The surgery performed was a decompressive spinal laminectomy and fusion. A decompressive laminectomy attempts to relieve the pressure on the nerves and the fusion attempts to properly realign and secure the vertebrae to prevent further destruction.

That Donna was and is very ill is clear. Shortly after the surgery, Donna became incontinent of the bowel and bladder, i.e., she was unable to control the natural evacuations of these organs. The incontinence of the bowel ceased some time thereafter; the bladder problem remains and is permanent. Donna's mother testified she had to help Donna to credate herself, a procedure where the patient pushes on the abdomen to empty the bladder. She stated that Donna has to wear "Pampers" all the time and carries them in a paper bag, hidden in her school bag, because she is embarrassed that the other children will see them; that every morning Donna wakes up in a wet bed; that she suffers from urinary tract infections and is required to take medication; and that Donna began menstruating at 12 years of age, and because of her incontinent condition, her periods are much more messy.

The questions remain, to what extent was the surgery the cause of Donna's condition; the extent if any to which Donna's condition is worse because of the surgery than it

would have been had the surgery not been performed; and whether in the totality of the circumstances, the jury's appraisal of the appropriate damage award to Donna was so far outside the range of reasonableness as to justify the trial court's interference with the jury's appraisal.

We note as a preliminary matter that there is no dispute that the operation was necessary, and that it was properly and competently performed. There is thus no issue of medical malpractice in the conventional sense.

Liability here was imposed rather on the basis of the lack of informed consent to the surgery — the mother's incapacity to consent; the failure adequately to explain the risks of surgery, including the risk that bladder incontinence might result even if the surgery was properly performed; and the other defects in the mother's consent that we have mentioned.

Surgery performed without informed consent is a violation of the patient's right of control of her own body; it is technically a battery. To an action based on such a battery, no degree of necessity, skill, or success of the surgery can be a complete defense, requiring dismissal of the action.

But when the jury has rendered a verdict in favor of plaintiff in a substantial sum — here $250,000 — and in considering whether the court may interfere with that verdict as "shockingly inadequate", we may properly consider how much, if at all, the patient is worse off than she would have been had the surgery not been performed. (Cf. *Henry v Bronx Lebanon Med. Center,* 53 AD2d 476, 481.)

On these medical questions there was surprisingly little disagreement between plaintiffs' expert and defendant's witness (who had performed the surgery). Where there were differences, they were largely differences of emphasis and degree. In such instances, the jury of course had the right to accept the view of either expert, or perhaps more wisely something in between; and the jury must be deemed to have accepted those versions or opinions which support the jury's verdict.

As we have seen, there was complete agreement that the surgery was both necessary and skillfully done.

Before the operation, the child's gait was abnormal; she had difficulty and pain on walking. Both doctors agreed that if the surgery were not performed, the continuance of pressure on the nerves caused by the spondylolisthesis would present a grave risk that the child would become a paraplegic. Plaintiffs' doctor agreed that this could or would have happened. Defendant's doctor said she "would" have become crippled, incapacitated, "she would not probably be able to use her legs ultimately."

Both doctors agreed that if the surgery were not performed, the disease would ultimately damage the nerves that cause activation of bladder and bowel. Defendant's doctor stated that if surgery were not performed, the disease would have ultimately caused a total incontinence of bowel and bladder.

As to when those consequences might have ensued had there been no surgery, plaintiffs' expert could not give a definite opinion. The operation was not an emergency; but as to when it should be performed, he said "the sooner the better."

Both doctors agreed that incontinence can occur even if the operation is performed perfectly; they apparently had differing views as to how common that complication was.

After the surgery, both bowel and bladder incontinence ensued. The bowel incontinence has ended; but the bladder condition is permanent.

It is obvious that the condition is a very grave one for the child.

With respect however to the difficulties in walking, etc., the operation appears to have been quite successful. She attends a "health class" at school. She plays softball, basketball, walks and runs around the gym, climbs ropes, and other than the interruptions to go to the toilet, she performs very well, both in the gym and academically.

The dollar amount that constitutes just compensation for physical injury is largely a subjective judgment. Presumably after considering all the factors, the jury thought $250,000 was just compensation to the child. Obviously the Trial Judge would have awarded more. But, within a wide range of reasonableness, the jury's judgment must be de-

terminative. In the present case we see no basis for saying that the jury's appraisal of the totality of the circumstances and its award were not within the permissible range of reasonableness.

As to the claim of plaintiff mother for loss of services, while the evidence of any loss of services to her is almost nonexistent, if the child's injuries merit an award of $250,000, we cannot say in the light of ordinary human experience, that it is unreasonable to find that the diminution in the ability of the child to render services at home, etc. is not equal to $10,000. On the other hand the evidence clearly does not justify an award of $50,000.

The order and interlocutory judgment (two papers) Supreme Court, Bronx County (GAMMERMAN, J.), entered respectively September 4, 1981 and February 8, 1982 should be modified on the facts to the extent of (a) reversing so much thereof as grants plaintiffs' motion to set aside the verdict in favor of plaintiff Donna Zimmerman and directs a new trial as to damages only as to that plaintiff unless defendant stipulates to increase the verdict from $250,000 to $400,000, and said motion should be denied and judgment directed to be entered in favor of said plaintiff on the jury's verdict of $250,000; and (b) extending until 30 days after the date of the order determining this appeal the time of plaintiff Barbara Zimmerman to stipulate to reduction of the verdict in her favor to $10,000 and judgment thereon; and the order and judgment are otherwise affirmed without costs on appeal.

SANDLER, J. P., BLOOM, MILONAS and KASSAL, JJ., concur.

Order and interlocutory judgment, Supreme Court, Bronx County, entered on September 4, 1981, and February 8, 1982, respectively, unanimously modified on the facts to the extent of (a) reversing so much thereof as grants plaintiffs' motion to set aside the verdict in favor of plaintiff Donna Zimmerman and directs a new trial as to damages only as to that plaintiff unless defendant stipulates to increase the verdict from $250,000 to $400,000, and said motion is denied and judgment is directed to be entered in favor of said plaintiff on the jury's verdict of

$250,000; and (b) extending until 30 days after the date of this court's order the time of plaintiff Barbara Zimmerman to stipulate to reduction of the verdict in her favor to $10,000 and judgment thereon; and the order and judgment are otherwise affirmed, without costs and without disbursements.