JANE GUEBARD, Plaintiff-Appellant, *v.* GERALD A. JABAAY, M.D., *et al.*, Defendants-Appellees.

Second District   No. 82—371

Opinion filed August 3, 1983.

4

James A. Geraghty, of Wheaton, and Paul J. Bargiel, of Doss, Puchalski, Keenan & Bargiel, Ltd., of Chicago, for appellant.

James S. Mills and Gates W. Clancy, both of Geneva, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Jane Guebard, appeals from a judgment entered on a jury verdict in favor of defendants, Gerald A. Jabaay, M.D., and Glen Ellyn Clinic, in a medical malpractice action.

Plaintiff originally filed her complaint on August 16, 1972, against the defendants. She alleged that in January 1971 she had injured her right knee in a down-hill skiing accident and thereafter came under the care of Dr. Jabaay, an orthopedic surgeon employed by the Glen Ellyn Clinic. When conservative treatment failed to alleviate her condition, Dr. Jabaay recommended surgery involving a Hauser procedure, which was performed at Loyola University Hospital in Maywood, Illinois, on June 22, 1971. When this surgery did not yield the desired improvement, Dr. Jabaay performed a second Hauser procedure on plaintiff's right knee at the Central Du Page Hospital on October 6, 1971. This second surgery was also unsuccessful and she alleged her knee was left in worse condition than it had been before the operations. Plaintiff alleged that defendants had negligently treated her and sought $500,000 in damages for her resulting condition, which required surgery a third time.

Subsequently, plaintiff learned that the first Hauser procedure had been substantially performed by Dr. Angell, then a first-year resident at Loyola University Hospital. Dr. Angell and Loyola were joined as defendants, and counts were later added alleging that Dr. Angell had performed the first Hauser procedure without plaintiff's knowledge or consent while she was unconscious, as breach of contract, battery and res ipsa loquitur. In a prior appeal, Guebard v. Jabaay (1978), 65 Ill. App. 3d 255, 259-60, this court held that plaintiff's fourth amended complaint against Dr. Angell and Loyola Hospital was barred by the applicable two-year statute of limitations, because they were not joined as party-defendants until some 2½ years after plaintiff should reasonably have discovered that she had a cause of action against Dr. Angell and his hospital employer.

On remand, the case against Dr. Jabaay and the Glen Ellyn Clinic

was submitted to the jury on two theories: (1) The absence of informed consent to the first Hauser procedure performed essentially by Dr. Angell, then a first-year resident; and (2) the absence of informed consent to the second Hauser procedure performed by Dr. Jabaay. Plaintiff withdrew counts alleging breach of contract and battery.

Prior to verdict the plaintiff filed a fifth amended complaint in three counts; the first count essentially alleging that before the first Hauser operation defendants failed to inform plaintiff that Dr. Angell, a first-year resident, would perform the surgery; and that before the second surgery defendants failed to inform plaintiff of the risks of the proposed treatment and alternatives to redoing the Hauser procedure. The second count charged defendants with willful and wanton misconduct. The third count was based on proof of the defendants' liability under a theory of *res ipsa loquitur* for negligence in the performance of the first operation. The court refused to instruct the jury on *res ipsa*.

The jury returned a verdict for the defendants and against the plaintiff. The plaintiff's post-trial motion for a judgment *n.o.v.* or a new trial was denied, and she appeals.

### THE FIRST SURGERY

Plaintiff initially contends that she did not give her informed consent to having Dr. Angell perform the first Hauser procedure, under Dr. Jabaay's guidance, to correct the lateral dislocation of her patella in Loyola University Hospital on June 22, 1971. A written consent to operate was apparently executed by Jane Guebard in the presence of Dr. Angell, the first-year resident, at 5:48 p.m. on June 21, 1971. She testified that she read the form and understood it before signing it. The signed form authorized Drs. Main, Blair, Jabaay, Huncke, "and such *assistants* as are assigned to the case to perform a Hauser procedure, right knee ***" (emphasis added).

Relying on the opinion testimony of her expert, Dr. Compere, and an A.M.A. article from August 1969, she argues that her surgeon, Dr. Jabaay, was ethically and legally bound to inform her of the substitution of a five-year resident for a board-certified orthopedic surgeon. Dr. Angell was in the first of a four-year residency and had not previously performed the Hauser procedure. Plaintiff further contends that the resulting medial dislocation of the patella was proximately caused by Dr. Jabaay's failure to inform plaintiff of the risks involved in having the relatively inexperienced Dr. Angell perform the Hauser procedure.

■■■ A physician has a duty to inform patients of the foreseeable risks and results of a given surgical procedure, and the reasonable alternatives to such procedure. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1031; *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 904; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 183.) The physician has a duty to disclose to the patient those risks, results or alternatives that a reasonable medical practitioner of the same school, in the same or similar circumstances, would have disclosed. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1032; *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 767.) The failure of the physician to conform to the professional standard of disclosure must be proved by expert medical evidence and failure to disclose must proximately cause plaintiff's injury. *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1032; *Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 92; *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 904.

■■ In a number of decisions, whether a signed form constituted effective consent to treatment has been held to present a proper question of fact for the jury. See *Cross v. Trapp* (W. Va. 1982), 294 S.E.2d 446, 460; *Garone v. Roberts' Technical & Trade School, Inc.* (1975), 47 A.D.2d 306, 309, 366 N.Y.S.2d 129, 133, quoting *Moore v. London* (1968), 29 App. Div. 2d 666, 666, 286 N.Y.S.2d 319, 320; *Rainer v. Community Memorial Hospital* (1971), 18 Cal. App. 3d 240, 257, 95 Cal. Rptr. 901, 911; Annot., 89 A.L.R.3d 32, 48 (1979). See also *Carman v. Dippold* (1978), 63 Ill. App. 3d 419, 426.

If Dr. Angell was simply an "assistant" he did not need to obtain plaintiff's consent to operate. (See *Harnish v. Children's Hospital Medical Center* (1982), 387 Mass. 152, 159, 439 N.E.2d 240, 245.) Dr. Jabaay testified that to him "assistant" meant "helper."

It is difficult to conclude that there was a question of fact for the jury to decide whether Dr. Angell acted as an "assistant." The report of the operation in handwriting notes that the surgery was done by the resident, Dr. Angell, with other typewritten references indicating Dr. Jabaay was the "assistant." The record reveals that Dr. Angell performed many of the steps detailed in the report of the operation. There is evidence in the testimony of Dr. Jabaay, however, that Dr. Jabaay participated in various ways, that he went over the procedure with Dr. Angell prior to the operation; he and Dr. Angell agreed on the transfer site for reattachment of the tubercle; he helped to test the site by manipulation while Dr. Angell held the tubercle in place at the site, and he felt and tested the tracking of the patella while Dr. Angell held and manipulated the leg. Further, he manipulated the leg while Dr. Angell placed stitches in the medial side of the retinaculum

and Dr. Jabaay sutured the skin with subcutaneous stitches. He also observed and supervised the entire procedure.

There was additional testimony that a "one man operation" would be "rather dangerous."

It appears from the evidence that Dr. Angell was the primary performer of the surgery, albeit under direction and supervision at a "teaching hospital." The consent could be said to contemplate that someone other than Dr. Jabaay would principally perform the surgery since other doctors were named even prior to his name on the consent form. It would not appear, however, that the jury could properly decide that plaintiff had been informed and consented to the extent of Dr. Angell's participation.

█ █ The doctrine of informed consent has been held not to apply, however, where, as here, the patient has given informed consent to surgical procedure which is performed by a surgeon other than the surgeon specifically authorized to operate. (*Perna v. Pirozzi* (1982), 182 N.J. Super. 510, 515, 442 A.2d 1016, 1019. See also *Zimmerman v. New York City Health & Hospitals Corp.* (1983), 91 A.D.2d 290, 291-92, 458 N.Y.S.2d 552, 554.) The authorities appear uniformly to agree that where an unauthorized surgeon operates, he commits a technical trespass to the patient resulting in the intentional tort of battery. (*Pratt v. Davis* (1906), 224 Ill. 300, 305; *Perna v. Pirozzi* (1982), 182 N.J. Super. 510, 515, 442 A.2d 1016, 1019, citing Louisell and Williams, Medical Malpractice sec. 8.09, at 220 (1974); 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* sec. 197, at 329-30 (1981); L. Riskin, *Informed Consent: Looking for the Action*, 1975 U. Ill. L.F. 580, 582.) Even the opinion relied on by plaintiff, *Buie v. Reynolds* (Okla. App. 1977), 571 P.2d 1230, 1236 (Brightmire, P.J., specially concurring) states "[t]he wrongful act renders the one who performs the surgery without consent guilty of a battery ***." However, plaintiff elected to withdraw counts alleging battery and breach of contract, and chose to rely solely on the wrong theory of informed consent. This was so even after plaintiff at the close of all the proofs filed her fifth amended complaint ostensibly for the purpose of conforming the pleadings to the proofs.

█ Even if plaintiff did not consent to Dr. Angell performing the surgery, once the counts of battery and breach of contract against these defendants were withdrawn, there was no basis under a theory of informed consent for the jury to return a verdict against defendants for the first surgery. The withdrawal of the earlier pleadings removed them from consideration, and left the issues in the same status as though the withdrawn pleadings had not been filed. (*Blazina v.*

*Blazina* (1976), 42 Ill. App. 3d 159, 164.) Plaintiff may have had a cause of action for battery against Dr. Angell, but in the first appeal (*Guebard v. Jabaay* (1978), 65 Ill. App. 3d 255, 259-60) it was decided that the suit was time-barred.

We conclude that, although plaintiff did not consent to have Dr. Angell primarily perform the surgery, she has no remedy under her pleaded theory of the lack of "informed consent" as to the first operation.

### THE SECOND SURGERY

Next plaintiff argues that defendants did not obtain her informed consent to the second Hauser surgery performed in Central Du Page Hospital on October 6, 1971. She relies on her nontreating expert, Dr. Compere, who testified on direct examination that she was not adequately informed as to her condition, the proposed treatment, and material risks to give her informed consent. Plaintiff also identifies as salient: (1) Dr. Jabaay intended to perform a comparatively simple surgery known as a "reefing" procedure to correct a medial dislocation, which had developed after the first surgery, until he indicated to her between 9-10 p.m. on the evening prior to surgery that he wanted to redo the Hauser procedure; (2) plaintiff was too upset by this disclosure to give her consent that night and executed a form authorizing the treatment at 8 a.m. the following morning only after she may have already been under pre-operation medication; (3) Dr. Jabaay never informed plaintiff that she had osteoporosis, or softened bone tissue, which could allow the bone plug to pull away easily from the bone and prevent the second surgery from being successful; and (4) plaintiff was never informed that an alternative treatment involving removal of the patella (knee cap), known as a patellectomy, would yield the desired improvements in function.

Dr. Jabaay testified that he informed plaintiff that there was the risk that after the second surgery lateral dislocation could recur; that there was an increased risk of infection; and that plaintiff would be in a cast again and have to do certain post-operative exercises to strengthen leg muscles. He did not tell her about the softened bone at the surgery site because he did not consider it a "major problem."

Defendants contend that Dr. Compere's opinion was couched in terms of a personal opinion only, not in the required terms of what a "reasonable *local* medical practitioner" (emphasis added) would have done in the same or similar circumstances.

To evaluate a physician's disclosure of information to his patient relative to whether that patient gave an informed consent to a pro-

posed medical procedure, the courts have adopted various standards; (1) the reasonable physician or national standard, (2) the community or local practice standard, and (3) the patient-need standard. See *Cross v. Trapp* (W. Va. 1982), 294 S.E.2d 446, 450-51; Annot., 88 A.L.R.3d 1088 (1978).

■ The reasonable physician or national standard simply measures the standard of physician disclosure by what a reasonable physician would disclose under the same or similar circumstances. (*Ziegert v. South Chicago County Hospital* (1981), 99 Ill. App. 3d 83, 92.) This is the rule in Illinois and remains the majority rule today. (See *Cowman v. Hornaday* (Iowa 1983), 329 N.W.2d 422, 425; see also *Harnish v. Children's Hospital Medical Center* (1982), 387 ·Mass. 152, 156 n.4, 439 N.E.2d 240, 243 n.4 (collecting cases from 13 other jurisdictions).) This rule substitutes a national standard of reasonable and ordinary care for the traditional locality standard. (*Cross v. Trapp* (W. Va. 1982), 294 S.E.2d 446, 451, citing 82 W. Va. L. Rev. 251, 275 (1979).) Since Illinois follows the reasonable physician or national standard (see *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 184), defendants' argument that plaintiff's expert testimony was not properly phrased in terms of the local practitioner standard fails.

Defendants also argue that there was no proof that plaintiff would have submitted to patellectomy had Dr. Jabaay informed her of this alternative treatment before the second surgery. Defendants apparently contend that Dr. Jabaay's failure to obtain her consent, assuming that it was not informed, was not the proximate cause of plaintiff's condition following the second surgery. The bone plug had pulled out and the patellar tendon had detached, requiring surgery a third time to remove a piece of bone and the screw. According to Dr. Jabaay, the bone plug could have pulled out because there was softening of the bone at the site of surgery, or because of a post-operative infection, or because of a "mushy" cast.

■ According to plaintiff, she did not learn that a patellectomy was an alternative treatment until she went to another physician after the second unsuccessful surgery. Her nontreating expert, Dr. Compere, testified without contradiction that a patellectomy had been found "most successful" in treating her condition, which included increased chrondomalacia or degeneration of the articular cartilage as a result of the scraping of the detached patella; that the patella is part of the extensor apparatus, but can be removed and the leg will "usually" retain "good function." In view of this substantially uncontradicted testimony, we are unable to conclude that there is sufficient proof that plaintiff's consent to the second Hauser procedure was informed.

██ █ Even though the informed consent may have been defective, plaintiff's resulting condition must have been proximately caused by the absence of informed consent. (*Green v. Hussey* (1970), 127 Ill. App. 2d 174, 185.) The majority rule is that causation in informed consent cases is determined by an objective standard, what a prudent person in plaintiff's position would have decided if adequately informed. (*Crain v. Allison* (D.C. App. 1982), 443 A.2d 558, 563 n.14; *Dessi v. United States* (E.D. Va. 1980), 489 F. Supp. 722, 729 (applying Virginia law); *Reiser v. Lohner* (Utah 1982), 641 P.2d 93, 98 n.18.) The plaintiff's testimony, while relevant, will be assessed under a reasonableness standard. (*Dessi v. United States* (E.D. Va. 1980), 489 F. Supp. 722, 729.) If disclosure would not have changed the decision of a reasonable person in the position of the patient, there is no causal connection between nondisclosure and his post-operative condition; if, however, disclosure would have caused a reasonable person in the position of the patient to refuse the surgery or therapy, a causal connection is shown. (*Sard v. Hardy* (1977), 281 Md. 432, 450, 379 A.2d 1014, 1025.) Otherwise, the physician is put in " 'jeopardy of the patient's hindsight and bitterness.' " *Sard v. Hardy* (1977), 281 Md. 432, 449, 379 A.2d 1014, 1025, quoting *Canterbury v. Spence* (D.C. Cir. 1972), 464 F.2d 772, 790-91.

██ Here plaintiff did not testify as to what she would have hypothetically done. Certain testimony militates in favor of a patellectomy. Plaintiff had some osteoporosis, which Dr. Jabaay chose not to disclose, and she had a smaller than normal femoral condyle, which the testimony showed would make patella dislocation more likely to recur. Nonetheless, the Hauser procedure was also a good treatment and plaintiff's expert, Dr. Compere, testified that he did not believe he had ever had any bad results from a Hauser procedure. Moreover, although a patellectomy would usually allow the leg good functioning, plaintiff would not have been able to lead as active a sports life as she might have been able to lead with successful Hauser surgery. The jury may also have been influenced by the fact that when plaintiff had surgery a third time, Drs. Fox and Kolb did not perform a patellectomy despite Dr. Fox' note that plaintiff was "probably a case for [a] patellectomy." We therefore conclude that a jury question was formed by the evidence. The verdict on this issue was not against the manifest weight of the evidence.

## Res Ipsa

Finally, the plaintiff argues that the trial court erred in refusing, as a matter of law, to apply the doctrine of *res ipsa loquitur* to the

first Hauser procedure. Plaintiff primarily relies on the undisputed testimony that prior to the first operation she had a lateral (outside) dislocation of her patella, while after surgery she had a medial dislocation (inside). Dr. Compere, plaintiff's expert, essentially testified that such a secondary medial dislocation is a rare and unusual occurrence.

The *res ispa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured (1) in any occurrence that would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant(s), and (3) under circumstances indicating the injury was not due to any voluntary act of neglect on the part of the plaintiff. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394.) The doctrine is applicable in medical malpractice actions. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 6; *Walker v. Rumer* (1978), 72 Ill. 2d 495, 500.) The duty of the trial court in the first instance is to decide whether, as a matter of law, the *res ipsa loquitur* doctrine applies at all. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 7.) Factual disputes presenting credibility questions or requiring evidence to be weighed as to the *res ipsa loquitur* requirements should not be decided by the trial judge as a matter of law. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 10.) The introduction of some evidence of negligence does not bar the doctrine of *res ipsa* where the cause of the injury is not conclusively established thereby. *Kolakowski v. Voris* (1980), 33 Ill. 2d 388, 397-98.

Plaintiff's testimony clearly meets two of the three elements of *res ipsa*. Her own conduct did not contribute to causing the medial subluxation or dislocation. Also, defendants were in control during surgery and were in the better position to explain what occurred. The determination which must be made as a matter of law is whether plaintiff produced evidence that " 'the occurrence is such as in the ordinary course of things would not have happened' " in the exercise of proper care. *Walker v. Rumer* (1978), 72 Ill. 2d 495, 500.

"Ordinarily" is the key concept of *res ipsa loquitur*. (*Quin v. George Washington University* (D.C. App. 1979), 407 A.2d 580, 583.) An inference of negligence cannot be based solely on the fact, however, that a rare and unusual result followed treatment of surgery. (See *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 526-27.) The expert testimony must establish that the rare and unusual condition, more probably than not, resulted from defendant's negligence. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 10. See also *Contreras v. St. Luke's*

*Hospital* (1978), 78 Cal. App. 3d 919, 931, 144 Cal. Rptr. 647, 655.

Dr. Compere testified from medical reports and X rays that the result of the first surgery "would not have required a second operation" if ordinary care had been used. He based his conclusion on the result, however, and did not state any deviation by Dr. Jabaay from the standard Hauser procedure.

Dr. Jabaay testified that plaintiff's condyles were "very flat," making it difficult to get her knee-cap to stay in. Dr. Sofield, defendants' expert, testified from plaintiff's medical records and X rays that the condyles of the femur were "too low," not "well-developed" or "too short," concluding that "it's easy enough for them to dislocate one way or the other ***." Dr. Compere, plaintiff's expert stated on cross-examination that plaintiff had "a little smaller" condyle than expected for a person of her size and that this anatomical problem can cause recurrent dislocation even without having had an injury "in some cases."

Dr. Compere did not directly testify that the dislocation is more likely the result of negligence than the congenital condition involving the shallow condyles. His testimony, however, that if the Hauser operation had been properly done the second operation would not have been necessary offers a strong inference that it was his opinion that the first Hauser operation was not properly performed.

In addition, plaintiff testified that Dr. Jabaay had admitted that in the first surgery he made a "mistake" and moved the knee "a quarter of an inch too far." Also, Dr. Jabaay's report of the second operation indicates that "[a]pparently the tibial tubercle had been transplanted too far medially." Dr. Sofield testified that medial dislocation occurs when the ligament is anchored too much to one side.

This testimony offered some specific evidence of negligence in the movement of the tibial tubercle in the first surgery which resulted in too much medial displacement. The evidence did not conclusively establish, however, that the injury resulted from this specific act of negligence. The testimony, therefore, did not of itself deprive plaintiff of the right to rely on the inference of general negligence arising from the doctrine of *res ipsa loquitur*. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 397.

We conclude that Dr. Compere's testimony was sufficient to show that the result of the first Hauser surgery "ordinarily" would not have occurred without negligent antecedents. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 9.) In *Spidle*, the surgeon admitted after the operation that he "operated a little too soon." From this, the majority found that a reasonable person could conclude that plaintiff's expert

believed that the injury more probably than not resulted from defendant's negligence and that, if believed, this was evidence of more than a mere unusual occurrence, so that the jury could have inferred negligence under *res ipsa loquitur*. Here we find a similar admission by Dr. Jabaay in his statements that he moved the knee or tibial tubercle a little too far, with further evidence, considered in a light most favorable to plaintiff, that could allow a reasonable person to conclude that plaintiff's expert believed that the injury more probably than not resulted from defendant's negligence. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 10.

We also conclude that the evidence here is of more than a mere unusual occurrence and though controverted involves a factual dispute which should not be decided by the trial judge as a matter of law but submitted to the jury. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 10.

Our decision in *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 906-07, cited by defendants is distinguishable on its facts. *Res ipsa loquitur* was held inapplicable in *Taber* because the plaintiff had an undisputedly serious congenital hip defect with hip damage and pain before the complained of surgery; further evidence clearly showed that complications involving the femoral nerve could arise absent any negligence on the part of the operating physician. Also, in *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 526-27, the doctrine was held inapplicable because, even if the complication which the plaintiff suffered was rare and unusual, there were no specific acts of negligence, merely differences in the exercise of individual judgment; and it was clear to the court under the evidence that the expert testimony showed that the doctor did not believe that plaintiff's injury more probably than not resulted from defendant's negligence.

The judgment of the trial court is reversed as to its dismissal of the *res ipsa loquitur* portion of the complaint. The judgment entered on the verdict of the jury as to counts I and II of the complaint against the defendants based on the violation of the doctrine of informed consent both as to the first and second operations is affirmed. Count III of the complaint as amended is remanded to the circuit court of Du Page County for further proceedings consistent with this opinion.

Reversed in part and remanded for a new trial; affirmed in part.

LINDBERG and VAN DEUSEN, JJ., concur.