MEME CORYELL, Plaintiff-Appellant, v. JOHN SMITH *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—94—1547

Opinion filed August 1, 1995.

Barbara J. Clinite, of Chicago, for appellant.

Rooks, Pitts & Poust, of Chicago (Thomas R. Hill and Edward P. Dis-mukes, of counsel), for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Meme Coryell appeals from the award of summary judgment (735 ILCS 5/2—1005 (West 1992)) to defendants in the medical malpractice action which she brought against them for their failure to obtain her informed consent to the surgery she underwent while in their care.

Plaintiff had developed lower back pain which, though not severe, occasionally interfered with her daily activities; and after consulting two other physicians, she saw defendant Dr. John Smith (Smith), an employee of defendant Reconstructive Surgery, Ltd., regarding abdominoplasty surgery for a condition known as diastasis rectus abdomis—explained during the course of the proceedings as "weak [stomach] muscles." The proposed surgery entailed undermining all of the skin and fat on plaintiff's abdominal wall, and repairing her stomach muscles.

On September 2, 1988, plaintiff underwent the proposed surgery, and thereafter the skin edges of the incision separated, causing necrosis, or death of tissue, and creating an open wound in her stomach. After 4¹/₂ months, the open wound healed, but a "major indentation" and scar tissue remained where the wound had been. Plaintiff complained that she would not have undergone the surgery had Dr.

Smith adequately disclosed to her the risks she had experienced and which she claims to have been foreseeable.

The trial court granted defendants' motion for summary judgment on the ground that plaintiff had failed to present any expert evidence showing that the alleged inadequacy of disclosure proximately caused her damages. For the following reasons, we reverse.

Summary judgment motions permit the trial court to determine whether any genuine issue of material fact exists in the action, and if not, to provide an expedient means of resolution. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) When deciding the motion, the trial court should construe all of the evidence before it strictly against the movant. (*Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417.) Our supreme court has warned that while summary judgments are to be encouraged in the interest of prompt disposition of lawsuits, they are a drastic measure; consequently, trial courts should grant such judgments only where the movant's right is so clear as to be free from doubt. (*Bascon*, 124 Ill. 2d at 393; *Purtill*, 111 Ill. 2d at 240.) The review of the grant of summary judgment is *de novo. Myers v. Health Specialists* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494.

■ Initially, we reject plaintiff's argument that defendants waived the issue of proximate causation by failing to raise it in their motion for summary judgment. (*Swift & Co. v. Dollahan* (1954), 2 Ill. App. 2d 574, 587, 120 N.E.2d 249 (defendants waived argument by failing to specify it in their motion to dismiss).) The record here shows that defendants clearly raised this issue in their reply memorandum and that plaintiff's attorney vigorously addressed the issue during the hearing on the motion.

Plaintiff next contends that defendants submitted insufficient evidence, namely Dr. Smith's affidavit, regarding proximate causation to entitle them to a judgment as a matter of law. (*Purtill*, 111 Ill. 2d at 241 (in motion for summary judgment, moving party has initial burden of supplying facts which, if not contradicted, would entitle such party to a judgment as a matter of law).) Alternatively, she asserts that she responded to defendants' motion with sufficient evidence to establish a genuine issue of material fact with respect to proximate causation. (*Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1071, 603 N.E.2d 1215 (party opposing summary judgment motion need not prove her case to defeat the motion, but must present some factual basis which would arguably entitle her to judgment).) Lastly, plaintiff urges this court to adopt a "modified objective" standard to determine proximate causation, one she maintains that she could satisfy.

Defendants retort that they met their burden as movants and that plaintiff did not meet hers, since she failed to provide any expert evidence indicating specifically that Dr. Smith's alleged failure to adequately disclose proximately caused her injury. They also argue against adopting plaintiff's "modified objective" standard.

To succeed in a malpractice action based on the doctrine of informed consent, the plaintiff must plead and ultimately prove four essential elements: (1) the physician had a duty to disclose material risks; (2) he failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose, the patient consented to treatment she otherwise would not have consented to; and (4) plaintiff was injured by the proposed treatment. (*Roberts v. Patel* (N.D. Ill. 1985), 620 F. Supp. 323, 325.) As noted above, and as the parties acknowledge on appeal, the trial judge in this case based his summary judgment ruling on the third element, finding that plaintiff had failed to present any expert evidence showing that Dr. Smith's alleged failure to disclose a material risk of the proposed surgery proximately caused her injury. That ruling is the focus of this appeal, and the parties do not raise issue with any of the other elements enumerated above.

Assuming, *arguendo*, that defendants met their burden as movants, we conclude that plaintiff was not required to present expert evidence specifically as to proximate causation, and that the evidence of record at this stage of the proceedings is sufficient to present a genuine issue of material fact regarding that element of her action.

"All courts recognizing the doctrine of informed consent require proof of proximate causation. The rule is that a plaintiff cannot recover under the doctrine unless [she] can prove by a preponderance of the evidence that [she] would not have given [her] consent to the proposed procedure had full and adequate disclosure been made at the time consent was originally given." (61 Am. Jur. 2d *Physicians, Surgeons, etc.* § 196 (1981).) To establish such a causal connection a plaintiff must point to significant undisclosed information relating to the treatment which would have altered her decision to undergo it. Illinois courts follow the majority of jurisdictions in using an objective standard to determine whether a plaintiff has made such a showing.

> "If disclosure would not have changed the decision of a reasonable person in the position of the patient, there is no causal connection between nondisclosure and [her] post-operative condition; if, however, disclosure would have caused a reasonable person in the position of the patient to refuse the surgery or therapy, a causal connection is shown." *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 10, 452 N.E.2d 751.

Further, there is authority holding that the objective standard is satisfied only through expert medical evidence indicating that the physician's failure to disclose proximately caused the plaintiff's injury. (*Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 551, 490 N.E.2d 181 (summary judgment proceeding where the court stated that the "[p]laintiff has the burden of proving through expert medical evidence that the failure of the physician to conform to the professional standard of disclosure proximately caused [her] injury"); *St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 769, 455 N.E.2d 294; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 185, 262 N.E.2d 156 (where the court first recognized inadequate consent as a cause of action and stated that expert testimony regarding proximate causation "was required of plaintiff to make a prima facia case"); but see *Casey v. Penn* (1977), 45 Ill. App. 3d 1068, 1069, 362 N.E.2d 1373 (specifically holding that in an informed consent case the plaintiff need not rely necessarily upon expert opinion testimony to establish proximate causation; instead, the plaintiff may rely on other "affirmative evidence," including the plaintiff's own testimony), citing *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301.

When enunciating the rationale behind utilizing an objective standard to determine proximate causation, Illinois courts quote for authority the following paragraph from the seminal case concerning failure to consent actions, *Cobbs v. Grant* (1972), 8 Cal. 3d 229, 502 P.2d 1, 104 Cal. Rptr. 505. There, the supreme court of California stated:

> " ' "The patient-plaintiff may testify on this subject [of proximate causation] but the issue extends beyond his credibility. Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that [had he been informed of the dangers he would have declined] treatment. Subjectively he may believe so, with the 20/20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment. Thus, *an objective test* is preferable: *i.e., what would a prudent person in the [plaintiff's] position have decided if adequately informed of all significant perils.*" [Citation.]' (Emphasis added.)" *Marshall v. University of Chicago Hospitals & Clinics* (1987), 165 Ill. App. 3d 754, 758, 520 N.E.2d 740, quoting *Tomlin*, 118 Ill. App. 3d at 769.

See also *Guebard*, 117 Ill. App. 3d at 10, citing *Canterbury v. Spence* (D.C. Cir. 1972), 464 F.2d 772, 790-91 (a case relied on by *Cobbs*, and where the court stated that without the use of the objective standard, the physician is put in "jeopardy of the patient's hindsight and bitterness").

Significantly, the court in *Cobbs* did not state that the objective standard it was positing could be satisfied only upon expert evidence as to proximate causation. In *Willard v. Hagemeister* (1981), 121 Cal. App. 3d 406, 175 Cal. Rptr. 365, the California Appellate Court stated that "[t]he [court] decided in *Cobbs* that the testimony of the patient-plaintiff may establish the causal relationship between the physician's failure to inform and the plaintiff's injury." (*Willard*, 121 Cal. App. 3d at 418, 175 Cal. Rptr. at 373.) This same understanding of *Cobbs* was essentially expressed by this court in *Guebard* when it pronounced that, although assessed under a reasonableness standard, a plaintiff's testimony regarding proximate causation was relevant to that issue. (*Guebard*, 117 Ill. App. 3d at 10.) Furthermore, in *Jambazian v. Borden* (1994), 25 Cal. App. 4th 836, 30 Cal. Rptr. 2d 768, although the controversy there centered around determining the reasonableness of the defendant's disclosure and whether he had established as a matter of law that he had no duty to disclose information about diabetes to the plaintiff, we find insightful the following paragraph in which the California Court of Appeals declared that no expert skill was required to weigh the risks of the proposed surgery involved there.

> "In *Cobbs*, the California Supreme Court stated, the physician's function in terms of disclosure consists of informing the patient of: the risks inherent in the procedure; the risks of a decision not to undergo treatment; and the probability of successful outcome of the treatment. [Citation.] The court reasoned there was *no expert skill required to weigh these risks* against individual subjective fears and hopes of the patient because such an evaluation and ensuing 'decision [was] a nonmedical judgment reserved to the patient alone.' " (Emphasis added.) *Jambazian*, 25 Cal. App. 4th at 847-48, 30 Cal. Rptr. 2d at 775.

See also *Arato v. Avedon* (1993), 5 Cal. 4th 1172, 1191, 858 P.2d 598, 609, 23 Cal. Rptr. 2d 131, 142 (referring to *Cobbs*, and outlining "the proper, albeit limited, role of expert testimony in informed consent cases," even as to the adequacy of the disclosure (element 1)).

Those cases requiring expert medical evidence as to proximate causation fail to clearly distinguish between what must be shown to prove a causal connection in an informed consent action and what must be shown to prove that same connection in an "ordinary" malpractice action, *i.e.*, they fail to focus on the appropriate question: Would a reasonably prudent person in the plaintiff's position, after being properly informed, have nonetheless proceeded with the proposed treatment?

Expert evidence is required to support a charge of malpractice

when the assessment of the alleged negligence requires knowledge, skill, or training in a technical area outside the comprehension of lay persons. *Schindel v. Albany Medical Corp.* (1993), 252 Ill. App. 3d 389, 395-96, 625 N.E.2d 114; see generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 702.1, at 493 (5th ed. 1990) (expert testimony allowed only if it will be "of assistance to the trier of fact in understanding the evidence or determining a fact in issue").

For example, although not the element in contention in this appeal, to succeed in any medical malpractice action a plaintiff must establish the applicable standard of care the physician is alleged to have breached. In an informed consent case this entails proving that the physician should have informed the patient, prior to administering medical treatment, of the " 'diagnosis, the general nature of the contemplated procedure, the risks involved, the prospects of success, the prognosis if the procedure is not performed and alternative medical treatment [element 1].' [Citation.]" (*Roberts*, 620 F. Supp. at 325.) This subject matter may be so technical and specialized that lay persons would not be in an adequate position to assess whether a breach of this duty had occurred without the aid of expert medical evidence establishing the applicable standard of disclosure. See *Roberts*, 620 F. Supp. at 325, citing, *inter alia, Green*, 127 Ill. App. 2d at 184.

However, what is required to prove the element of proximate causation in an action based upon a physician's failure to disclose differs significantly from what is required to prove that same element in an "ordinary" malpractice action. For example, in an "ordinary" action the issue of proximate causation is frequently raised within the context of a defendant's failure to diagnose, or to timely diagnose, a plaintiff's condition. (See *Topp v. Logan* (1990), 197 Ill. App. 3d 285, 298-99, 554 N.E.2d 454 (whether defendant's failure to order certain tests earlier was the proximate cause of plaintiff's injury); *Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098-99, 517 N.E.2d 295 (whether defendant's failure to refer plaintiff to orthopedic specialist in a timely manner would have prevented the necessity to amputate her right leg); *Wade v. Ravenswood Hospital Association* (1954), 3 Ill. App. 2d 102, 110, 120 N.E.2d 345 (whether defendant's failure to perform spinal puncture on the plaintiff at an earlier moment aggravated or affected plaintiff's injuries for which she sought treatment).) In those types of malpractice cases expert evidence is generally necessary to assist the jury in determining whether the physician's breach of his duty to diagnose or to timely diagnose proximately caused the plaintiff's injury since that determination

usually requires knowledge, skill, or training in a technical area outside the comprehension of lay persons.

In an informed consent action, however, after they have been educated as to the information that the physician should have disclosed to the plaintiff (element 1), no one is in a better position than the jury to determine whether any alleged undisclosed information would have altered the plaintiff's decision to undergo the proposed treatment had it been disclosed. Moreover, since the issue of proximate causation in an informed consent case relates to what a person of ordinary prudence would do under the same or similar circumstances as those confronting the plaintiff, it is even more compelling that the members of the jury, based on their own knowledge and experience, and using their native common sense, understand and determine the issue of whether, after proper disclosure, a prudent person would have nonetheless proceeded with the proposed treatment.

■ Consequently, in the case *sub judice*, requiring plaintiff to present expert evidence on the element of proximate causation in opposition to defendants' motion for summary judgment was improper.

We also note that plaintiff's response to defendants' motion for summary judgment included the affidavit of her expert, who averred that Dr. Smith should have disclosed to plaintiff all of the risks of the proposed surgery, including infection, necrosis, and scarring of the abdominal skin, and that failure to do so would not have been in conformance with the prevailing standard of disclosure (element 1). Further, in her deposition, plaintiff stated that she would not have elected to undergo the proposed surgery had Dr. Smith properly informed her of all of the material risks associated therewith, but that she would have opted for nonsurgical treatment, and she explained why she would have exercised that option. See *Guebard*, 117 Ill. App. 3d at 10 (in malpractice action based on inadequacy of consent, plaintiff's testimony regarding proximate causation is relevant).

Therefore, we conclude that plaintiff presented sufficient evidence to provide a jury with a factual issue: whether a reasonably prudent person in her position, properly informed, would not have elected to undergo surgery. (*Quality Lighting, Inc. v. Benjamin* (1992), 227 Ill. App. 3d 880, 884, 592 N.E.2d 377 (in summary judgment motions, it is the duty of the court to construe evidence strictly against the movant and liberally in favor of the non-movant).) Consequently, we need not reach plaintiff's alternative argument that we should adopt a "modified objective" standard to establish proximate causation.

For the foregoing reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARTMAN and McCORMICK, JJ., concur.