894 A.2d 1208 (2006)
384 N.J. Super. 395
Rosa ACUNA Administratrix Ad Prosequendum and General Administratrix of the Estate of Andres Acuna,[1] Deceased Infant and Rosa Acuna Individually, Plaintiffs-Appellants,
v.
Sheldon C. TURKISH, M.D., and the Obstetrical and Gynecological Group of Perth Amboy-Edison, P.C., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 2005.
Decided April 7, 2006.
*1209 Harold J. Cassidy, Shrewsbury, argued the cause for appellants (Harold J. Cassidy and Associates, attorneys; Mr. Cassidy and Thomas J. Viggiano, III, on the brief).
John Zen Jackson argued the cause for respondents (Kalison, McBride, Jackson & Murphy, attorneys; Mr. Jackson, of counsel and on the brief; Leonardo M. Tamburello, on the brief).
Before Judges A.A. RODRÍGUEZ, CUFF and HOENS.
*1210 The opinion of the court was delivered by
RODRÍGUEZ, A. A., P.J.A.D.
Plaintiff, Rosa Acuna, appeals from the summary judgment dismissing her complaint against defendants Sheldon C. Turkish, M.D. and his medical group, the Obstetrical and Gynecological Group of Perth Amboy-Edison, P.C. (collectively "defendants"). We reverse.
Some aspects of the dispute between these parties were the subject of an earlier decision of this court. See Acuna v. Turkish, 354 N.J.Super. 500, 808 A.2d 149 (App.Div.2002). Because that decision bears directly on the issues now before us, we must first set out the essential facts and the procedural history of this litigation.
At the time of the events in question, Acuna was twenty-nine years old. She was married and was the mother of two daughters. Those children had been born of Acuna's second and third pregnancies, her first pregnancy having ended in a miscarriage in 1993. On April 6, 1996, Acuna consulted Turkish, an obstetrician and gynecologist who had delivered Acuna's second child, because she was suffering from abdominal pain.
After Turkish examined Acuna, he advised her that she was pregnant for the fourth time. The pregnancy was in its sixth to seventh week. He also advised her that she should terminate the pregnancy for medical reasons. According to Acuna, Turkish told her that she "needed an abortion because [y]our kidneys are messing you up." Since the time she had been in high school, Acuna had suffered from renal glycosuria, a disorder of the kidneys. Acuna asked Turkish whether "the baby was already there." According to Acuna, Turkish replied, "Don't be stupid, it's only blood."
At her deposition, Acuna shed some light on her understanding of the word "pregnant." She testified that, "[O]bviously I knew I was pregnant, I just needed to know and I wanted to know if the baby was  if there was a baby already in me." In the following deposition excerpt, Acuna further explained her understanding of what it means to be pregnant.
[TURKISH'S COUNSEL]: Q. What did that word pregnant mean to you in your mind in January 1993 [the time of her miscarriage]?
[ACUNA'S COUNSEL]: A. As long as you give the month, that was fine.
[ACUNA]: That eventually somewhere down the line I was going to have a baby.
[TURKISH'S COUNSEL]: Q. In your mind in January of 1993, more specifically than somewhere down the line you're going to have a baby, what in your mind was happening inside your body in January of 1993?
[ACUNA]: A. I didn't know exactly what was happening inside my body. I knew I had gotten pregnant but I didn't know exactly what was forming inside my body at this moment.
Following the April 6, 1996 examination by Turkish, Acuna discussed the physician's advice with her husband. Three days later, she signed a consent form for an abortion. Turkish performed a vacuum aspiration. However, Acuna continued to bleed. Seven weeks later, Acuna went to Robert Wood Johnson Hospital where she was diagnosed with an incomplete abortion. Acuna underwent a dilation and curettage. According to her, one of the nurses caring for her explained that the procedure was necessary because Turkish "had left parts of the baby inside of [her]." Thus, Acuna concluded based on the reference to "the baby" that she had given *1211 consent to an abortion based on erroneous information.
Acuna filed an eleven-count complaint against defendants and a fictitiously named nurse.[2] There were two amendments to the complaint. The second amended complaint asserted causes of action on behalf of Acuna for medical malpractice and negligent infliction of emotional distress based on lack of informed consent and negligent performance of the abortion. The complaint also alleged causes of action on behalf of "the estate of Michael Doe (ficitious name of a real individual), deceased infant of Rosa Acuna" in the nature of wrongful death and survival claims.
In 2001, defendants moved for summary judgment on the emotional distress, wrongful death, and survival claims. Following oral argument, the motion judge granted defendants' motion and dismissed these claims. Acuna's motion for reconsideration was denied. This court then granted Acuna's motion for interlocutory review of the dismissal of the wrongful death and the emotional distress claims only. We affirmed the dismissal of the wrongful death claim, but reversed the dismissal of the emotional distress claim and remanded for further proceedings. Acuna, supra, 354 N.J.Super. at 505, 808 A.2d 149.
As that opinion notes, the review of the summary judgment order as it related to the emotional distress claim rested on the following assumptions: (1) Turkish "owed a duty to [Acuna] to disclose all material information that a prudent patient might find significant in deciding whether or not to terminate her pregnancy;" and (2) Turkish "breached that duty, and the breach was a proximate cause of [Acuna's] choice to undergo the procedure." Id. at 514-15, 808 A.2d 149.
In that earlier opinion, we rejected the motion judge's conclusion that, although there were factual issues concerning the informed consent issue, Acuna was not entitled to proceed on her informed consent claim because the "fetus"[3] was not a constitutional person. Id. at 515, 808 A.2d 149. We noted that in Roe v. Wade, 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147, 180 (1973), the United States Supreme Court held that, "the word `person' as used in the Fourteenth Amendment does not include the `unborn.'" Notwithstanding that, we concluded that with respect to Acuna's emotional distress claim:

Roe is not dispositive here because this is not a case implicating a government's attempt to limit a woman's privacy right to terminate a pregnancy. Crediting plaintiff's proofs, it is about a woman who claims severe emotional distress caused by medical advice resulting in her grudging consent to terminate a pregnancy, purportedly given because of defendant's failure to advise her of the material consequences of the procedure. The fact that a fetus may not be a `person' under the Fourteenth Amendment is irrelevant because plaintiff's claim is not dependent upon whether or not the fetus enjoys a constitutional *1212 status as a `person.' The claimed malpractice committed by defendant was directed against plaintiff as an expectant mother and thus was a direct, not a derivative claim. See Giardina,[4] 111 N.J. at 413, 545 A.2d 139 (`the medical malpractice causing an infant stillbirth constitutes a tort against the parents, entailing the direct infliction of injury...').
[Acuna, supra, 354 N.J.Super. at 515, 808 A.2d 149.]
We then concluded that Acuna's emotional distress claim is "well founded" pursuant to New Jersey case law, relying on Giardina and Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980). Accordingly, we remanded for resolution of the factual issues regarding informed consent.
Following that remand, Acuna filed her third amended complaint, in which she identified Michael Doe as "Andres Acuna" and essentially reasserted all of the claims, including the wrongful death and survival counts that had been dismissed. The parties thereafter engaged in extensive discovery directed to the informed consent issue. In 2003, defendants moved for summary judgment seeking dismissal of all counts of the complaint. A different judge heard the motion. Acuna's counsel conceded to the judge at oral argument that only two claims remained. These claims, both based on the lack of informed consent, are negligent infliction of emotional distress (styled as the Giardina-Portee claim), and a claim for physical injury to Acuna. Counsel explained that the claim for negligent performance of the abortion had been abandoned.
The judge granted defendants' motion and dismissed the informed consent claims in a written opinion. Acuna moved for reconsideration and for leave to file a fourth amended complaint. The proposed fourth amended complaint did not assert a new cause of action. According to Acuna's counsel, the amendment "would in much greater detail set forth [Acuna's] uninformed consent negligence claim." The judge denied the motions for reconsideration and for leave to file a fourth amended complaint.
Acuna filed two appeals, one in her individual capacity challenging the dismissal of her informed consent claims (A-4022-03) and one in her capacity as administratrix of the estate of the aborted embryo for its wrongful death (A-4023-03). We calendared these separate appeals back-to-back and we address them in this single opinion.

The Informed Consent Claims (A-4022-03T5)
At the outset we note that Acuna does not allege that the abortion was performed against her will. She concedes that she consented to the procedure, but she argues that she was given insufficient information by Turkish to allow her to make an intelligent, informed decision regarding the abortion. As a result, according to Acuna's expert, she suffered severe emotional and psychological trauma, which led to the development of acute post-traumatic disorder, major clinical depression and psycho-sexual dysfunction.
Acuna's first contention on appeal is premised on the following statement: "[T]he Appellate Division already ruled in this case that the doctor must disclose that a pregnant mother's unborn child is in existence before she can make an informed decision of whether or not to submit to the procedure." Because this premise is not consistent with our previous holding, we are constrained to reiterate our earlier analysis here.
*1213 In discussing Acuna's claim for emotional distress pursuant to Giardina-Portee based upon lack of informed consent, we said:
[A] woman's right to determine for herself whether or not to continue or terminate her pregnancy ... protects a distinctively personal interest, . . . [b]ased on a woman's circumstances and discrete moral and religious beliefs, to choose not to terminate the pregnancy after being informed by her physician regarding the status of the fetus and all other facts that may be deemed material in making that choice. The wrongful birth of a baby with a congenital defect may obviously give rise to profound mental anguish. Based on the circumstances, background and beliefs of a mother, inducing her to terminate the pregnancy, even at eight weeks, because of the physician's failure to obtain an informed consent may also result in severe distress and mental anguish.
[Acuna, supra, 354 N.J.Super. at 518, 808 A.2d 149 (citations omitted).]
Requiring a physician to give information "regarding the status of the fetus and all other facts that may be deemed material in making that choice" is very different than requiring a physician to disclose to a pregnant mother that "her unborn child is in existence before she can make an informed decision on whether or not to submit to the procedure." In Acuna, supra, we determined that, in the context of an abortion, the information to be disclosed was fact-sensitive and remanded for development of the record.
Here, Acuna alleges that her consent to an abortion was "uninformed" because Turkish failed to accurately answer her question, "[I]s the baby already there?" More particularly, she argues that "if New Jersey does not require a complete disclosure that helps the mother understand that the life of an existing family member will be terminated, then [her] protection and due process rights would be violated." (emphasis added).
Based on this articulation of her argument, it is apparent that Acuna considered the embryo, six or seven weeks after conception, to have been "an existing family member." Therefore, she believes that there was a single correct answer to her question. She thus concludes that only an affirmative answer would have discharged Turkish's duty to provide sufficient information to allow her to make an informed decision about an abortion. Defining her claim in this fashion does not help the analysis of this informed consent case. In the informed consent context, the standard to be applied is an objective one. See Canesi v. Wilson, 158 N.J. 490, 506, 730 A.2d 805 (1999). The standard is derived from what a reasonably prudent patient would deem to be significant to a decision rather than what any particular patient believes. See Largey v. Rothman, 110 N.J. 204, 213, 540 A.2d 504 (1988). Obviously, the term "baby" meant something different to Acuna and Turkish. For her, it meant an embryo or fetus; for the doctor, a human being following birth. Arguably, from Turkish's perspective, he answered correctly, and discharged his duty to his patient by indicating that there was no "baby" there.
Although we do not agree with Acuna's interpretation of our earlier opinion or with her argument that there was a single correct answer that Turkish failed to provide, we find merit in her assertion that the judge erred in granting summary judgment. We do so, however, for entirely different reasons than those advanced in Acuna's brief.
It is well-settled that in a non-emergent situation, a physician must obtain *1214 a patient's informed consent before the physician may treat or operate on the patient. Largey, supra, 110 N.J. at 207, 540 A.2d 504; see also Niemiera v. Schneider, 114 N.J. 550, 555 A.2d 1112 (1989). The physician has a duty to explain, in terms understandable to the patient, what he or she intends to do before subjecting the patient to a course of treatment or an operation. Matter of Farrell, 108 N.J. 335, 347, 529 A.2d 404 (1987). The reason for the existence of this duty is to protect each person's right to self-determination in matters of medical treatment. Ibid. "Physicians ... have a duty to evaluate the relevant information and disclose all courses of treatment that are medically reasonable under the circumstances." Matthies v. Mastromonaco, 160 N.J. 26, 34, 733 A.2d 456 (1999).
In order to obtain the patient's informed consent, the physician must tell the patient not only about the alternatives that he or she recommends, but also about all medically reasonable alternatives that the doctor does not recommend. Id. at 37, 733 A.2d 456. The physician has a duty to explain, in words the patient can understand, all material medical information and risks. Medical information or a risk of a medical procedure is material when a reasonable patient in the plaintiff's position would be likely to attach significance to it in deciding whether or not to submit to the treatment. Id. at 37-39, 733 A.2d 456; see Canesi, supra, 158 N.J. at 511 n. 5, 730 A.2d 805. Moreover, a physician does not adequately discharge his or her responsibility by disclosing only the treatment alternatives that are recommended. Matthies, supra, 160 N.J. at 37-39, 733 A.2d 456. "Accordingly, the physician should discuss the medically reasonable courses of treatment, including non-treatment" and their attendant probable risks and outcomes. Id. at 38, 733 A.2d 456.
Applying these well-settled principles of informed consent to this record, we must reverse the summary judgment dismissing Acuna's emotional distress claim. The issue presented here is quite narrow, i.e., what medical information is material and must be disclosed by an obstetrician when advising a patient to terminate a pregnancy and what medical information is material when the patient asks if the "baby" is already "there?"
In addressing this question, the standard against which Turkish's communication with Acuna should be measured is not a legal issue to be defined by this court. Nor is it established by expert testimony. See Largey, supra, 110 N.J. at 213-14, 540 A.2d 504. Rather, "[w]henever non-disclosure of particular risk information is open to debate by reasonable-minded [people], the issue is one for the finder of facts." Id. at 213, 540 A.2d 504 (quoting Canterbury v. Spence, 464 F.2d 772, 788 (D.C.Cir.), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L. Ed.2d 518 (1972)); see Sgro v. Ross, 337 N.J.Super. 220, 226, 766 A.2d 1147 (App.Div.1998), aff'd, 166 N.J. 338, 765 A.2d 745 (2001). Therefore, while both parties are free to present testimony of experts who are deemed by the trial court to be qualified to testify and to express an opinion, the finder of fact ultimately will be required to address that debate in the context of the reasonably prudent patient standard.
Here, accepting Acuna's version of the facts as true, see Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995), we conclude that summary judgment was inappropriate because a reasonable patient would not have received the information necessary to make an informed decision. Because we conclude that summary judgment should be reversed, we do not address Acuna's additional arguments that "it was error for the *1215 Law Division to dismiss the complaint on the ground the complaint only alleged the doctor failed to make a single disclosure" or that "it was further error for the court to deny Acuna to amend the complaint."

The Wrongful Death Claim (A-4023-03T5)
Acuna contends that the dismissal of the wrongful death claim under N.J.S.A. 2A:31-1 to -6 violated her right to equal protection of the law. As already noted, in the earlier appeal, we affirmed the dismissal by the first motion judge of the wrongful death claims. Acuna, supra, 354 N.J.Super. at 507-13, 808 A.2d 149. An appellate decision on the merits is final though it does not terminate the case, and it becomes the law of the case. State v. Myers, 239 N.J.Super. 158, 164, 570 A.2d 1260 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990). Such a decision is not tentative, or subject to later review. Ibid. Generally, "[p]rior decisions on legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous." Sisler v. Gannett Co., Inc., 222 N.J.Super. 153, 159, 536 A.2d 299 (App.Div.1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988). The doctrine is more stringent when applied to an appellate decision in the same case than it is when applied to prior trial court decisions in the same case. In re SMB Assocs. v. Dep't of Envtl. Prot., 264 N.J.Super. 38, 60, 624 A.2d 14 (App. Div.1993), aff'd, 137 N.J. 58, 644 A.2d 558 (1994).
Here, the evidence and arguments presented following the remand are not substantially different. Therefore, we decline to address, for a second time, the merits of the issues raised in A-4023-03T5.
Summarizing, we reverse the summary judgment entered on Acuna's informed consent claim in A-4022-03T5 and we remand that matter for further proceedings consistent with this opinion, and we decline to address the issues raised in A-4023-03T5.
Reversed and remanded for further proceedings.
NOTES
[1] The second amended complaint refers to "Michael Doe, (fictitious name of a real individual), deceased infant." The third amended complaint refers to "Andres Acuna, deceased infant."
[2] The counts alleging causes of action against the fictitiously named nurse were subsequently abandoned.
[3] In our earlier opinion, we used the term fetus because it was the term used by the motion judge to refer to Michael Doe. Medically speaking, the correct term would have been embryo, given the undisputed six to seven week gestational age. Embryo is defined as "in human beings, the developing organism from conception until approximately the end of the second month." A fetus "represents the product of conception from the end of the eight week to the moment of birth." Stedman's Concise Medical Dictionary, 326, 375 (2d ed.1994).
[4] Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139 (1988).