# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Doe v. Planned Parenthood/Chicago Area*, 2011 IL App (1st) 091849

---

| | |
|---|---|
| Appellate Court Caption | MARY DOE (a Fictitious Name of a Real Individual), Indiv. and as Representative of a Class of all Women Similarly Situated; MARY DOE, as Adm'r of the Estate of Michael Doe, Deceased Child of Mary Doe, and as Representative of a Class of all other Pregnant Mothers Similarly Situated, Plaintiffs-Appellants, v. PLANNED PARENTHOOD/CHICAGO AREA; JOHN DOE; MURRAY PELTA; LOUIS FERNANDEZ 1 to 10 (Fictitious Names for Real Individuals); NEAL GOULD; and JANE JONES 1 to 20 (Fictitious Names for Real Individuals who Provide Client and Patient Counseling at Planned Parenthood/Chicago Area Abortion Clinics), Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-09-1849, 1-09-3551 cons. |
| Filed | August 19, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not err in dismissing plaintiff's complaint alleging wrongful death, negligent infliction of emotional distress and a violation of the Consumer Fraud Act based on the abortion she consented to after defendants counseled her that the fetus she was carrying was not a "human being." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-12858; the Hon. Mary K. Rochford, Judge, presiding. |

| | |
|---|---|
| Judgment | Affrimed. |
| Counsel on Appeal | Steven A. Denny, of Law Office, of Steven A. Denny, P.C., of Chicago, and Harold J. Cassidy, *pro hac vice*, of Cassidy Law Firm, of Shrewsbury New Jersey, for appellants. |
| | Alan S. Gilbert, Wendy N. Enerson, and Kristen C. Rodriguez, all of Sonnenschein Nath & Rosenthal LLP, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion. Justices Cahill and R. Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiff Mary Doe appeals the dismissal of her complaint against Planned Parenthood and others. According to the complaint, the plaintiff, about three months pregnant, visited a help center because of uncertainty over her pregnancy. At the pregnancy help center she was told that the fetus she was carrying was a "human being." Thereafter, she visited the Planned Parenthood office in Chicago, which she identifies as an "abortion clinic." According to her complaint, she was counseled at Planned Parenthood that the fetus she was carrying was not a "human being." While at Planned Parenthood, the plaintiff signed a form consenting to a pregnancy termination procedure that same day, which she underwent. On the two-year anniversary of her abortion, the plaintiff filed, as she characterizes it in her brief, a "medical malpractice" suit against Planned Parenthood, its nursing/counseling staff, and the physicians that performed and assisted in the medical procedure, which she filed "both individually and as Special Administratrix of the estate of her child Michael Doe." Grounded on her medical negligence allegations, her suit asserted three causes of action: (1) wrongful death of her fetus; (2) negligent infliction of emotional distress; and (3) violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)). All three counts asserted that the plaintiff was misled by Planned Parenthood when she asked "if there was already a human being in existence" before she consented to the abortion procedure. She claims the defendants "incorrectly denied that fact," which caused her to undergo an abortion she otherwise would not have consented to. The circuit court granted the defendants' motion to dismiss. On our *de novo* review, we affirm.

¶ 2                                                                  BACKGROUND

¶ 3 We accept as true the allegations in the plaintiff's complaint. On December 8, 2004, the

plaintiff, 19 years old and about 12 weeks pregnant, sought counseling and assistance from the defendant Planned Parenthood/Chicago Area (PP), an abortion clinic. The plaintiff asked a PP counselor whether an abortion would terminate the life of a human being in the biological sense. The counselor replied in the negative. The plaintiff told the counselor that she had been informed by a pregnancy help center that an abortion terminates the life of a human being. The counselor replied that pregnancy help centers often deliberately misrepresent the facts to prospective mothers. The counselor assured her that an abortion did not terminate the life of a human being. Given this assurance, the plaintiff decided to have an abortion that same day.

¶ 4    Exactly two years later, the plaintiff, individually and on behalf of her aborted fetus, filed the instant complaint against the clinic, its doctors, and its nursing/counseling staff, collectively the defendants. (The complaint also asserted allegations in support of a class action, which she does not pursue on appeal.) The plaintiff claimed the defendants committed medical negligence premised on their breach of a common law duty compelling certain disclosures. First, the defendants had a duty to inform her that an abortion "procedure would terminate the life of a second patient, a living human being as a matter of biological fact." Second, the defendants had a duty to inform her there is a greater risk of death, depression, suicide and breast cancer in women who undergo an abortion than in those who give birth. The plaintiff maintained that the defendants' failure to comply with their duty to disclose this information proximately caused her to undergo an abortion. That is, but for the defendants' failure to fully inform her of the direct and collateral consequences of an abortion, she would not have terminated her pregnancy on December 8, 2004.

¶ 5    The defendants moved to dismiss the plaintiff's complaint based on the consent form she signed. After the filing of briefs by the parties, the circuit court dismissed the complaint. The court held the defendants owed no duty to inform a patient of PP that an abortion terminates the life of a human being in the biological sense as a matter of law. Regarding the defendants' alleged violation of the duty to inform her of the "greater risk" associated with an abortion than giving birth, the circuit court concluded no cause of action was stated when she did not allege she experienced any of the "greater risks" associated with a pregnancy termination.

¶ 6    Apart from the insufficient allegations of medical negligence, the circuit court held the individual counts in the complaint were legally unsustainable. The court ruled section 2.2 of the Wrongful Death Act (740 ILCS 180/2.2 (West 2008)) barred the wrongful death count. The court ruled the negligent infliction of emotional distress count failed to state a cause of action where Illinois common law does not recognize the duty the defendants allegedly breached by failing to disclose certain information. The circuit court ruled the Consumer Fraud Act does not apply to actions grounded in medical negligence.

¶ 7    The plaintiff timely filed a notice of appeal. After the plaintiff's motion for reconsideration was denied, the plaintiff filed a second notice of appeal. On her motion, we consolidated the plaintiff's appeals, though she no longer challenges the denial of her motion to reconsider.

¶ 8                                  ANALYSIS

¶ 9        In her main brief, the plaintiff asserts "Defendants committed medical malpractice in their treatment of Plaintiff Mary Doe *** by making false statements and by failing to properly disclose information relative to the treatment in violation of the principles of law relating to *informed consent*." (Emphasis added.)

¶ 10       Illinois recognizes a common law duty by doctors to inform their patients of the foreseeable risks and results of a surgical procedure before obtaining the patient's consent to the proposed medical procedure. See *Davis v. Kraff*, 405 Ill. App. 3d 20, 28-29 (2010) (citing *Coryell v. Smith*, 274 Ill. App. 3d 543, 546 (1995)). Though the plaintiff's complaint does not expressly assert a count for medical malpractice, her complaint makes clear that the three causes of action asserted in her complaint are grounded in her allegations under the doctrine of informed consent. We first examine the sufficiency of those allegations. We then examine the three counts specifically pled in the complaint. See *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 419 (1989) (the allegations of a complaint, and not the characterization of a cause of action, define the nature of a claim). We review *de novo* the circuit court's dismissal of the plaintiff's complaint. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).


¶ 11                              Informed Consent

¶ 12       "To succeed in a malpractice action based on the doctrine of informed consent, the plaintiff must plead and ultimately prove four essential elements: (1) the physician had a duty to disclose material risks; (2) he failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose, the patient consented to treatment she otherwise would not have consented to; and (4) plaintiff was injured by the proposed treatment." *Coryell*, 274 Ill. App. 3d at 546. The plaintiff contends the defendants had a common law duty to disclose (1) that an abortion terminates the life of a human being in the biological sense and (2) that an abortion carries a "greater risk" of death, depression, suicide and breast cancer, before she could give informed consent to the medical procedure that terminated her pregnancy.

¶ 13       The plaintiff links the two disclosures as if they arise from a single duty under Illinois common law. In other words, the two disclosures are so inextricably linked that we need address only whether Illinois common law compels the first disclosure. If we reject the plaintiff's argument that a common law duty exists that a patient at an abortion clinic be informed that an abortion terminates the life of a human being in the biological sense before informed consent can be given, then it follows there is no common law duty to disclose the claimed "greater risks" associated with a pregnancy termination. In that event, the plaintiff has no right to present her allegations of medical negligence to a jury. See *McWilliams v. Dettore*, 387 Ill. App. 3d 833, 845 (2009) ("Before a medical negligence case *** can reach a jury, a plaintiff must [establish] the standard of care against which the conduct of the defendant doctor may be measured." (citing *Walski v. Tiesenga*, 72 Ill. 2d 249, 255 (1978))).

¶ 14       The plaintiff insists a question of fact is imbedded in her informed consent claims, which triggered her right to a jury trial. "The court below committed error by treating the question

-4-

of what disclosures a physician must make when obtaining consent as an issue of law to be decided by the court, rather than recognizing that it is a fact question that must be decided by the finder of fact."

¶ 15 The plaintiff confuses the notion of a legal duty with its breach. "Much confusion over duty stems from courts' [and lawyers'] tendency to attribute a variety of different meanings to the term." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006). "[Often,] confusion over duty arises because *** 'the existence of a duty is not a discoverable fact of nature.' [Citation.] On the contrary, determining whether a duty should be imposed involves considerations of public policy." *Id.* (quoting 1 Dan B. Dobbs, The Law of Torts § 229, at 582 (2001)). Whether the question the plaintiff put to the PP defendants–whether an abortion terminates the life of a human being in the biological sense–constitutes a question of fact is immaterial because the crux of the plaintiff's claim is that she was entitled to but one answer from the PP defendants. She contends the PP defendants should have answered "yes" to her question, a claim she proposes to present to a jury.

¶ 16 However, before she is entitled to present her claim to a jury, a plaintiff "must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff." *Id.* at 430. While a given set of facts may give rise to a duty, whether a duty exists is not so readily discoverable. Often times " 'the concept of duty in negligence cases is very involved, complex and indeed nebulous.' " *Id.* at 435 (quoting *Mieher v. Brown*, 54 Ill. 2d 539, 545 (1973)). Policy considerations are central to the question of whether a legal duty exists. *Id.* at 436. Thus, "[w]hether a duty exists in a particular case is a question of law for the court to decide." *Id.* at 430.

¶ 17 As the plaintiff's complaint makes clear, fundamental to her initial claim of trial court error is her contention that her complaint raised a factual question regarding the disclosures. "[T]he question of what actually must be disclosed by a physician, is not a legal question of duty, but rather a question of fact–what does the reasonable physician disclose to the reasonable patient." As we made clear above, the plaintiff is mistaken in her assertion that the claimed disclosures raise a question of fact, rather than a legal question of duty. If a duty to disclose arises under the alleged facts, the law imposes that duty on all physicians under the same or similar circumstances. See *Weekly v. Solomon*, 156 Ill. App. 3d 1011, 1016 (1987) ("The standard by which a physician's disclosure to his patient is evaluated is that of the reasonable physician, which measures the defendant physician's disclosure by what a reasonable physician would disclose under the same or similar circumstances."). Thus, whether the defendants must make certain disclosures before informed consent can be given to undergo a medical procedure concerns the legal issue of duty, which the court must decide in the first instance. *Marshall*, 222 Ill. 2d at 436.

¶ 18 Anticipating our conclusion that a physician's duty to disclose raises a legal issue, the plaintiff argues her "claims are [nonetheless] consistent with Illinois law." She asserts "Illinois law requires more than just a discussion of the risks of the procedure [of abortion]. It also requires a discussion of the results and the alternatives." She contends that from the perspective of a woman that is contemplating an abortion and from the perspective of the fetus, the results of an abortion are paramount, which compels a disclosure of alternatives. "Only if the doctor provides this information can the mother as the decision maker for the

child make an informed decision about whether or not to proceed with the procedure." She cites *Guebard v. Jabaay*, 117 Ill. App. 3d 1, 6 (1983), to support her claim that she lacked informed consent to proceed with an abortion in the absence of the disclosures by the defendants.

¶ 19        In *Jabaay*, the court rejected the plaintiff's claim that she lacked informed consent when a resident doctor rather than the orthopedic surgeon she entrusted with her care performed the first medical procedure she underwent. *Id.* at 10. The court then considered the plaintiff's argument that she lacked informed consent regarding the second medical procedure she underwent because she was never informed of an "alternative treatment" with a better success rate for her condition. *Id.* at 9. The *Jabaay* court ruled the question of whether the plaintiff gave informed consent for the second procedure was for the jury to answer. *Id.* at 10. Ultimately, the jury answered the question against the plaintiff. The court held that verdict was not against the manifest weight of the evidence where the evidence established that the plaintiff underwent a third surgical procedure, but that procedure was not the "alternative treatment" the plaintiff claimed she should have been told about before she could give informed consent to the second procedure. *Id.* at 9. Nonetheless, the *Jabaay* court reversed for a new trial because the circuit court erred in not instructing the jury on *res ipsa loquitur*. *Id.* at 10-13. There is nothing in *Jabaay* to support the plaintiff's argument that Illinois common law compels the defendants to disclose that an abortion terminates the life of a human being in the biological sense before she could give informed consent to the abortion. Nor does the plaintiff cite other Illinois authority to support her argument.

¶ 20        Rather, the plaintiff discusses two cases from other jurisdictions in the course of her argument that her claims are legally sufficient. She cites *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008), for the proposition "[t]hat it is possible to distinguish between the scientific meaning of 'human being' and the philosophical and theological meanings" in the context of an abortion. She discusses *Acuna v. Turkish*, 930 A.2d 416 (N.J. 2007), a decision that rejected the existence of the common law duty urged before us, to disavow its persuasiveness. We find both cases provide guidance on the issues before us, but each guides against the position taken by the plaintiff.

¶ 21        In a remarkably similar case, the New Jersey Supreme Court rejected the plaintiff's contention that there existed a "common law duty requiring a physician to instruct the woman that the embryo is an 'existing human being,' and suggesting that an abortion is tantamount to murder." *Acuna*, 930 A.2d at 418. (The remarkable similarity with the instant case may be explained by the statement at oral argument of plaintiff's counsel that he represented Acuna before the New Jersey Supreme Court.) As the quote from *Acuna* makes clear, the plaintiff's claim there concerned an embryo, a medical term that reflects the gestational age. The instant plaintiff claims no significance that her pregnancy involved a fetus.

¶ 22        The appellate division of New Jersey reinstated Acuna's emotional distress claim. *Acuna v. Turkish*, 894 A.2d 1208, 1214 (N.J. Super. Ct. App. Div. 2006). The appellate court ruled the issue on appeal concerned "what medical information *** must be disclosed by an obstetrician when advising a patient to terminate a pregnancy and what medical information is material when the patient asks if the 'baby' is already 'there?' " *Id*. The court concluded

material questions of fact precluded summary judgment. "[W]henever non-disclosure of particular risk information is open to debate by reasonable-minded [people], the issue is one for the trier of facts." (Internal quotations omitted.) *Id.* The New Jersey Supreme Court reversed.

¶ 23    While the similarities of the *Acuna* case and the instant case are striking, there are dissimilarities, which we note from the appellate court's decision. Acuna consulted her obstetrician because she was suffering abdominal pains. *Acuna*, 894 A.2d at 1210. Unlike the instant plaintiff, she did not visit an *abortion clinic*. According to Acuna, the defendant doctor told her "she 'needed an abortion because [y]our kidneys are messing you up.' " *Id.* The New Jersey appellate court noted: "Since the time she had been in high school, Acuna had suffered from renal glycosuria, a disorder of the kidneys." *Id.* There is no suggestion in the instant plaintiff's complaint that she visited the abortion clinic under the belief that an abortion was medically necessary.

¶ 24    The New Jersey Supreme Court, on its review of the appellate court's decision reinstating the negligent infliction of emotional distress count, framed the issue as "whether, under the common law duty to obtain informed consent, a physician is required to advise a woman, who is in the sixth to eighth week of pregnancy, that an abortion procedure will kill not just a potential life, but an actual existing human being." *Acuna*, 930 A.2d at 424. Much as in the instant case, the New Jersey high court noted each party marshaled experts with opposing answers on whether a human being in the biological sense was in existence at the time of the abortion and whether a reasonable doctor in the defendant's position should be required to disclose that information before performing an abortion. *Id.* at 425. From these conflicting offers of proof, the court concluded that the issue was one that divided the medical community and society at large. "On the profound issue of when life begins, this Court cannot drive public policy in one particular direction by the engine of the common law when the opposing sides, which represent so many of our citizens, are arrayed along a deep societal and philosophical divide." *Id.* at 427. Ultimately, the New Jersey Supreme Court refused to "place a duty on doctors when there is no consensus in the medical community or among the public supporting plaintiff's assertions." *Id.* The court observed: "Plaintiff has not directed us to any jurisdiction or any court that has found a common law duty requiring doctors to tell their pregnant patients that aborting an embryo is the killing of an existing human being–an instruction suggesting that both the doctor and patient would be complicit in committing the equivalent of murder." *Id.* at 426. That observation of the New Jersey Supreme Court remains equally true in the instant appeal.

¶ 25    The plaintiff's reliance on *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008), as a case supporting her position, is misplaced. Although the *en banc* decision of the federal court of appeals postdated the *Acuna* decision by the New Jersey high court, the New Jersey court observed a critical distinction regarding the contentions in *Rounds* and the contentions in the suit pursued by Acuna: "*Rounds*, of course, addresses a *statute* enacted by the democratically elected representatives of a state whereas plaintiff is urging this Court to adopt through its common law the informed consent provisions of that *** *statute*." (Emphasis added.) *Acuna*, 930 A.2d at 427.

¶ 26    This crucial distinction between a duty imposed by common law and a duty imposed by

legislative action remains, notwithstanding the federal court of appeals *en banc* decision to reverse the majority's decision upholding a preliminary injunction against enforcement of the legislation. *Rounds*, 530 F.3d at 726. As a legislative act of South Dakota, neither the South Dakota statute nor the *en banc* decision in *Rounds* stands as authority for a "common law duty requiring doctors to tell their pregnant patients that aborting an embryo is the killing of an existing human being," in the language of the New Jersey Supreme Court. *Acuna*, 930 A.2d at 426. To state the obvious, if the common law recognized the duty urged by the plaintiff in *Acuna* and by the instant plaintiff, there would be no need for a statute such as the one passed by the South Dakota legislature.

¶ 27    We echo the observation of the New Jersey Supreme Court. No court, regardless of where it sits, has found a *common law duty* requiring doctors to tell their pregnant patients that aborting an embryo, or fetus, is the killing of an existing human being. *Id.* That observation remains true even after the *en banc* decision of the federal court of appeals in *Rounds*.

¶ 28    Finally, the New Jersey Supreme Court's comments on Acuna's attempt to apply the informed consent doctrine to her medical malpractice suit apply equally to the suit the instant plaintiff seeks to pursue.

> "[T]he common law doctrine of informed consent requires doctors to provide their pregnant patients seeking an abortion *only* with material medical information, including gestational stage and medical risks involved in the procedure. Under that doctrine of informed consent, the knowledge that plaintiff sought from defendant cannot be compelled from a doctor who may have a different scientific, moral, or philosophical viewpoint on the issue of when life begins. Therefore, we do not find that the common law commands a physician to inform a pregnant patient that an embryo is an existing, living human being and that an abortion results in the killing of a family member." (Emphasis in original.) *Acuna*, 930 A.2d at 427-28.

See *Walski*, 72 Ill. 2d at 261 (the practice of medicine is "a profession which involves the exercise of individual judgment within the framework of established procedures"); *Mercado v. Mount Sinai Hospital Medical Center of Chicago*, 382 Ill. App. 3d 913, 915 (2008) ("Plaintiff's agreement to terminate an ectopic pregnancy was *not* requisite consent to terminate [what a medical professional concluded was] a uterine pregnancy." (Emphasis in original.)).

¶ 29    Under the circumstances of the instant case, we add that a difference in scientific, moral, or philosophical viewpoint on the issue of when life begins is virtually guaranteed when a plaintiff seeks medical advice in "an abortion clinic," as the instant plaintiff did. The negative answer from the Planned Parenthood counselor to the plaintiff's question of whether "there was already a human being in existence" during the plaintiff's intake evaluation simply reflects the opinion of Planned Parenthood on when life begins. See *Walski*, 72 Ill. 2d at 261 ("Differences in opinion are consistent with the exercise of due care."). We reject the plaintiff's claims that the defendants owed her disclosures under Illinois common law that reflected something other than the scientific, moral, or philosophical viewpoint of Planned Parenthood as an abortion clinic before the plaintiff could provide informed consent

in writing to a pregnancy termination procedure, a contention that we find borders on contrivance. See *People v. Gersch*, 135 Ill. 2d 384, 396 (1990) ("Only on rare occasions will courts determine that a change in the common law is needed to reflect societal changes or vindicate public interests."). Consistent with the New Jersey Supreme Court's decision in *Acuna* and with the *en banc* decision in *Rounds*, the *Gersch* court contrasted the court's authority to change common law with the legislature's, which has "inherent power to alter the common law at any time." *Id.*

¶ 30    Against the backdrop that Illinois common law does not compel the disclosures the plaintiff claims should have been made to her before the defendants could rely on her written consent to undergo an abortion, the legal sufficiency of the three counts specifically pled in the plaintiff's complaint at law require little discussion.

¶ 31                                    Wrongful Death

¶ 32    The Wrongful Death Act provides a statutory cause of action to recover damages for the death of another caused by "wrongful act, neglect or default." 740 ILCS 180/1 (West 2004). The circuit court held the plaintiff's wrongful death claim is barred by section 2.2 of the Wrongful Death Act, which states: "There shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion where the abortion was permitted by law and the requisite consent was lawfully given." 740 ILCS 180/2.2 (West 2004).

¶ 33    The meaning of the term "requisite consent" in section 2.2 of the Wrongful Death Act was recently interpreted by this court. " 'Requisite' is defined as 'required by the nature of things or by circumstances or by the end in view.' " *Mercado*, 382 Ill. App. 3d at 915 (quoting Webster's Third New International Dictionary 1929 (1993)). " '[T]he term "consent" *** implies an understanding of the thing consented to.' " *Id*. at 916 (quoting *People ex rel. Walker v. O'Connor*, 351 Ill. App. 545, 548 (1953)).

¶ 34    The instant plaintiff maintains that she did not give the "requisite consent" to undergo a pregnancy termination procedure. There is no authority in Illinois that before a patient may lawfully consent to undergo a pregnancy termination procedure, the medical facility must disclose to the patient that an abortion terminates the life of a human being in the biological sense. The reason is obvious: when a patient undergoes a pregnancy termination procedure, the patient has an understanding of the thing consented to because the "end in view" is obvious. In other words, for purposes of requisite consent, the plaintiff had "the information necessary" that an "abortion" is an abortion. *Mercado*, 382 Ill. App. 3d at 916.

¶ 35                        Negligent Infliction of Emotional Distress

¶ 36    The plaintiff's negligent infliction of emotional distress claim is founded on her claim that the defendants owed a common law duty to inform her that an abortion terminates the life of a human being in the biological sense. Where Illinois fails to recognize a duty of care claimed by a plaintiff, that plaintiff has no right to present her claim of a breach of that duty to a trier of fact. *McWilliams*, 387 Ill. App. 3d at 845.

¶ 37                    Violations of the Consumer Fraud Act

¶ 38     The Consumer Fraud Act makes it unlawful to use "unfair or deceptive acts or practices *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2004). "Illinois courts have previously interpreted the term 'trade or commerce' as defined by the Act to exclude medical, dental and legal services." *Tkacz v. Weiner*, 368 Ill. App. 3d 610, 613 (2006). Count III of the plaintiff's complaint is outside the bounds of the Act.


¶ 39                              CONCLUSION

¶ 40     The circuit court properly dismissed the plaintiff's complaint with prejudice. We affirm the judgment of the circuit court.


¶ 41     Affirmed.