**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0298-24

ROSA M. WILLIAMS-HOPKINS,
on behalf of herself and those
similarly situated,

     Plaintiff-Appellant,

v.

LVNV FUNDING, LLC,

     Defendant-Respondent.

_____

Argued October 1, 2025 – Decided November 20, 2025

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6190-17.

Scott C. Borison (Borison Firm, LLC) of the District of Columbia, Maryland, and California bars, admitted pro hac vice, argued the cause for appellant (Kim Law Firm, LLC, and Scott C. Borison, attorneys; Yongmoon Kim, Scott C. Borison, and Mark Jensen, on the briefs).

Jacquelyn A. DiCicco (J. Robbin Law, PLLC) argued the cause for respondent (Jacquelyn A. DiCicco and Jonathan M. Robbin, on the brief).

PER CURIAM

Plaintiff Rosa M. Williams-Hopkins appeals from a June 8, 2018 order granting a motion by defendant LVNV Funding, LLC to compel arbitration of this matter, and an August 16, 2024 order granting defendant's motion to confirm the arbitrator's award and denying plaintiff's cross-motion to vacate the award. We affirm.

We have considered this matter on two prior occasions, Rosa M. Williams-Hopkins v. LVNV Funding, LLC (Williams-Hopkins I), No. A-5325-17 (App. Div. Apr. 26, 2019) and Rosa M. Williams-Hopkins v. LVNV Funding, LLC (Williams-Hopkins II), No. A-3398-21 (App. Div. Oct. 17, 2023), and are fully familiar with the facts and procedural history. We recite certain facts from our previous opinions to provide context for plaintiff's third appeal.

In Williams-Hopkins I, we noted when plaintiff "acquired a credit card from First Premier Bank (Bank)" she "was required to sign a Credit Card Contract and Initial Disclosure Agreement (Agreement), indicating her assent to the terms and conditions in the document." Williams-Hopkins I, slip op. at 2.

Further, we stated the Agreement provides: "any claim, dispute or controversy between you and us arising from or relating to the [c]ontract or your [c]redit [a]ccount relationship . . . including, but not limited to the validity,

2

enforceability or scope of the [a]rbitration [p]rovision [or] th[is] contract. . . shall be settled by binding arbitration . . . ."  Ibid. (all but last alteration in original).  Moreover, "[t]he term 'claim' addressed 'claims of every kind and nature, including but not limited to initial claims, counterclaims, cross claims and third[-]party claims, and claims based upon contract, tort, fraud and other torts, statutes, . . . regulations, common law and equity.'"  Ibid.  In addition, "[t]he word 'contract' encompassed 'the terms and conditions outlined in [the] Agreement.'"  Id. at 2-3 (second alteration in original).  Further, "[t]he term 'us' included the Bank 'and all of its affiliates, licensees, predecessors, successors, assigns, [and] any purchaser of your [c]redit [a]ccount . . . .'"  Id. at 3 (all but first alteration in original).  Also, "[t]he Agreement . . . included, in capital letters, a 'Waiver of Right to Trial' and 'Waiver of Right to Participate in Class Action.'"  Ibid.

Here we note, the Agreement provides:  "you agree that this is a contract involving interstate commerce that is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16 . . . (the 'FAA')."

"Plaintiff did not deny signing the Agreement.  Nor did she disavow her use of the credit card for three years before defaulting on her payment obligations."  Williams-Hopkins I, slip op. at 3.

A-0298-24

Plaintiff filed a class action lawsuit against defendant. Plaintiff alleged: (1) defendant violated the New Jersey Consumer Finance Licensing Act (NJCFLA), N.J.S.A. 17:11C-1 to -49, because it "enforced its assigned accounts against New Jersey consumers through collection letters, lawsuits, and post-judgment collection efforts," without the required license and asserted this conduct was an "unconscionable commercial practice" under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227; and (2) defendant was unjustly enriched because the funds it collected were "illegally obtained" and therefore defendant must be disgorged of collected funds and provide restitution.

Defendant "moved to . . . compel arbitration in accordance with the Agreement." Williams-Hopkins I, slip op. at 3. In considering the motion, the judge found "plaintiff signed the Agreement and, consistent with the terms and conditions in the Agreement, plaintiff's claims were required to be resolved through arbitration." Ibid. In her June 8, 2018 order, the "judge granted defendant's motion" to compel arbitration. Ibid.

Plaintiff appealed from the June 8, 2018 order. We noted plaintiff's argument that "defendant failed to prove it had a valid assignment of the Agreement from the Bank" and "[a]bsent evidence of a valid assignment, . . . defendant c[ould not] compel arbitration." Id. at 4 (footnote omitted). We stated

4

plaintiff's claim as "to the Bank's assignment of the Agreement to defendant," "as well as other issues raised . . . , must be submitted to arbitration in accordance with the terms of the Agreement." Id. at 5. We further noted, "[d]uring oral argument before [our] panel, [that] defendant conceded the arbitrator should determine whether the Bank assigned to defendant all rights under the Agreement, including the right to compel arbitration." Ibid. We affirmed the June 8, 2018 trial court order and the matter proceeded to arbitration.

As to arbitrability, the arbitrator considered "two alternative theories." First, whether defendant could enforce the arbitration provision as an assignee. Second, assuming defendant had no right as an assignee, whether plaintiff should be "equitably estopped" from avoiding her obligation to arbitrate.

The arbitrator found insufficient evidence to establish defendant had a "perfected" assignment from the Bank. Williams-Hopkins II, slip op. at 4. Therefore, defendant could not compel arbitration as an assignee. However, the arbitrator stated that "[e]quitable estoppel allows a non-signatory to enforce an arbitration provision in a contract against a signatory where the signatory relies on that agreement in its affirmative claims." The arbitrator noted "[plaintiff's complaint] ma[de] repeated references to and 'presume[d] the existence' of [the]

5

A-0298-24

Agreement." Ibid. (first and fourth alteration in original). Thus, the arbitrator concluded plaintiff was "equitably estopped from denying her obligation to submit all claims . . . to arbitration." The arbitrator concluded "it would be inequitable to find that [plaintiff] c[ould] assert claims directly related to her credit card [A]greement against [defendant], while ignoring the broad arbitration clause contained in that [A]greement." Id. at 4-5 (first and fourth alteration in original).

Rather than complete the arbitration process, plaintiff "filed a motion with the trial court alleging the arbitrator 'exceeded the scope of his authority.'" Id. at 5. The trial court, relying on our opinion in Williams-Hopkins I, "observed that '[we] previously held, it [wa]s for the arbitrator to determine the enforceability of the arbitration provision'" and denied plaintiff's motion in its order of May 26, 2022. Plaintiff appealed from the trial court's order. Plaintiff argued "the arbitrator 'exceeded the scope of his authority,'" Williams-Hopkins II, slip op. at 5; and that our opinion in Williams-Hopkins I "did not preclude [her] from further argument on the issue of the arbitrator's authority to determine arbitrability. We disagree[d]." Id. at 6.

In Williams-Hopkins II, we noted the time to appeal from our opinion in Williams-Hopkins I had expired. Therefore, absent "substantially different

6

evidence . . . , new controlling authority, or the prior decision [being] clearly erroneous," none of which plaintiff alleged, the law of the case applied. Williams-Hopkins II, slip op. at 5 (quoting Acuna v. Turkish, 384 N.J. Super. 395, 407 (App. Div. 2006), rev'd on other grounds, 192 N.J. 399 (2002)) (citation and internal quotation marks omitted). Therefore, we "decline[d] to re-visit our opinion that the arbitrator ha[d] the authority to determine whether the parties [we]re subject to arbitration." Id. at 5-6.

We noted "[t]he Agreement state[d] any claim 'including, but not limited to the validity, enforceability or scope of the [a]rbitration [p]rovision [or] content of the contract' shall 'be settled by binding arbitration.'" Id. at 6 (all but second alteration in original) (quoting Williams-Hopkins I, slip op. at 4). "Therefore, in keeping with [Williams-Hopkins I], the arbitrator was within his authority to determine whether the arbitration agreement was enforceable for other reasons." Id. at 6-7. We affirmed the trial court's May 26, 2022 order.

The parties returned to arbitration and submitted cross-motions for summary disposition. Plaintiff sought:

> [S]ummary disposition in its favor on four grounds: (1) that [defendant wa]s not the assignee of the [Bank's] debt; (2) even if the debt was assigned, the transfer of the debt was "void" because [defendant] was not a licensed entity [under the NJCFLA]; (3) that [defendant]'s unlicensed acts violate[d] the [CFA]; and

A-0298-24

(4) [defendant] was unjustly enriched by any debt collected from [plaintiff] because [defendant wa]s a stranger to the debt.

Defendant contended plaintiff could not "prevail on any of [her] claims."

On November 1, 2023, the arbitrator issued a fourteen-page order accompanied by his conclusions. The arbitrator determined defendant was "entitled to summary disposition on [plaintiff]'s claims for declaratory relief and violation of the []CFA." The arbitrator concluded "[b]ecause there [wa]s no private right of action under the NJCFLA, [plaintiff]'s cause of action . . . c[ould not] stand as a matter law." In addition, the arbitrator provided other grounds why plaintiff failed to sustain a CFA claim.

The arbitrator determined plaintiff was "entitled to summary disposition that [defendant wa]s not the assignee of the" Bank debt. The arbitrator found "no evidence of an express writing" and "[w]ithout it, the record d[id] not contain evidence sufficient to establish the assignment of rights."

The arbitrator further found there was a "question whether [defendant] had the right to seek any payment from [plaintiff] under the . . . [A]greement." Therefore, "a genuine issue as to a material fact remain[ed] and . . . both [cross-]motions for summary disposition on the unjust enrichment claim [we]re denied." (second alteration in original).

A-0298-24

On January 26, 2024, defendant moved to confirm the arbitrator's award. On March 11, 2024, plaintiff cross-moved to vacate the award. On April 16, 2024, plaintiff voluntarily dismissed her unjust enrichment claim.

On August 16, 2024, the trial court heard the parties' oral arguments regarding the motions. Plaintiff stated she was "not challenging . . . that arbitrability goes to [the] arbitrator." Instead, she argued the arbitrator exceeded the scope of his authority when deciding the issue of arbitrability through the application of equitable estoppel. In addition, she contended that Coinbase, Inc. v. Suski, 602 U.S. 143 (2024), provided new controlling authority and an exception to the law of the case as applied here because a challenge to a contract as a whole includes a challenge to a delegation provision in an arbitration agreement.

In an oral opinion, the judge acknowledged the parties' arguments regarding the timeliness of defendant's cross-motion but nevertheless considered the merits of the arguments. The judge stated she could not set aside the award "merely because . . . [she] would have decided the facts or construed the law differently." Instead, the judge stated her analysis was "guided by . . . the statute." In this respect, the judge cited to the FAA, specifically 9 U.S.C. § 10(a), providing "grounds" to vacate an arbitration award.

A-0298-24

The judge explained she considered the law of the case as we stated in our prior opinions in Williams-Hopkins I and Williams-Hopkins II. Quoting from our prior opinions, the judge said:

> We affirm[ed] the trial court's June 8, 2018 order compelling arbitration. We observed that, one, the [A]greement states any claim including, but not limited to the validity, enforceability, or scope of the arbitration provision[ or] contract, shall be settled by binding arbitration.

Therefore, the judge concluded the arbitration provision's "[validity], enforcement or the scope of it goes to the arbitrator."

The judge stated plaintiff's reliance on Coinbase to avoid the law of the case doctrine was misplaced because Coinbase was "simply" inapplicable. The judge noted the Court "specifically state[d] . . . '[i]t took [Coinbase] to decide whether under the FAA, a [c]ourt or an arbitrator decides which of . . . two contractual provisions control.'" The judge stated Coinbase applies where the "parties have agreed to two contracts, one sending arbitrability disputes to arbitration and the other explicitly or implicitly sending arbitrability disputes to the [c]ourts." Under those specific circumstances, the judge found it was for the court to decide which contract governed. However, the judge concluded the facts in this case differed from the facts in Coinbase because here there is "only

10

the one contract." The judge executed the August 16, 2024 order confirming the arbitrator's award in its entirety and dismissed the matter with prejudice.

On appeal, plaintiff argues: (1) Coinbase is new controlling authority, thereby providing an exception to the law of the case as applied here; (2) the arbitration award must be vacated under 9 U.S.C. § 10(a)(4), because the arbitrator exceeded his authority by compelling arbitration after concluding defendant did not have rights pursuant to an assignment; (3) the arbitration award must be vacated on common law grounds because the arbitrator "manifestly disregarded controlling law"; (4) the arbitrator erred in not concluding defendant's violation of NJCFLA rendered the parties' Agreement void and by applying equitable estoppel to compel arbitration; and (5) her cross-motion was timely filed.

We apply a de novo review to: (1) the application of the law of the case doctrine; (2) interpretation of common law; and (3) the decision to vacate an arbitration award. See State v. K.P.S., 221 N.J. 266, 276 (2015) (appellate review regarding the application of the law of the case doctrine is de novo); Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (appellate review of rulings of law and interpretation of the common law is de novo); Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) ("As the decision to vacate an arbitration

award is a decision of law, [we] review[] the denial of a motion to vacate an arbitration award de novo" (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010))); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995) (holding the review of a court's decision to vacate, 9 U.S.C. § 10, or confirm, 9 U.S.C. § 9, an arbitration award is de novo as to questions of law).

Coinbase

Plaintiff contends Coinbase stands for the proposition that her challenge to the Agreement is not severable from the arbitration clause contained in the Agreement. According to plaintiff, the matter must be remanded to the court to consider the merits of her challenge; that she has no agreement with defendant.

Plaintiff asserts that before Coinbase:

> "[A] challenge as to whether a particular matter is subject to arbitration or can be decided by a court – must be directed at the delegation clause itself (which itself constitutes an arbitration agreement subject to enforcement); a general challenge to the validity of the agreement as a whole will not suffice to permit arbitration to be avoided[,]" [quoting] Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 195 (2019) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. . . . [63,] 72 [(2010)]).

Plaintiff argues that since Coinbase, "where a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must

12

address that challenge," quoting Coinbase, 602 U.S. at 151. Therefore, she contends because she "has repeatedly asserted that [defendant and her] had no agreement . . . and the entire . . . [A]greement is void because of [defendant]'s violations of" the NJCFLA, "the prior law of the case delegating the issue of arbitrability to the [a]rbitrator without addressing [her] challenges to the . . . Agreement is no longer consistent with binding jurisprudence." She claims we "must reverse the [o]rder compelling arbitration and remand the matter so that the court may address the merits of [p]laintiff's challenge that she has no agreement with [defendant], consistent with Coinbase." We conclude plaintiff's reliance on Coinbase is misplaced.

In Coinbase,

> The parties . . . executed two contracts. The first contained an arbitration provision with a delegation clause; per that provision, an arbitrator must decide all disputes under the contract, including whether a given disagreement is arbitrable. The second contract contained a forum selection clause, providing that all disputes related to that contract must be decided in California courts. Coinbase insists that the first contract's delegation clause established the terms by which all subsequent disputes were to be resolved, so the arbitrability of a contract-related dispute between these parties is a matter for the arbitrator to decide. But respondents maintain—and the Ninth Circuit held— that the second contract's forum selection clause superseded that prior agreement. This case thus presents the following question: When two such

13

contracts exist, who decides the arbitrability of a contract-related dispute between the parties—an arbitrator or the court?

. . . Here . . . before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls.

[602 U.S. at 145.]

The Court explained it: "granted certiorari to answer the question of who—a judge or an arbitrator—should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause," id. at 147, and "took this case to decide whether, under the FAA, a court or an arbitrator decides which of the two contractual provisions controls." Id. at 151. In answering the query the Court held, "where, as here, parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." Id. at 152.

Our matter is factually distinguishable from Coinbase because we are concerned with a single agreement. As appropriate to our matter, the Court stated, "[i]n cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent

14

a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration."  Ibid.

The Court's statement is consistent with its prior holdings.  In Rent-A-Center, the Court stated:

> There are two types of validity challenges under [9 U.S.C.] § 2:  "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). In a line of cases neither party has asked us to overrule, we held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); Buckeye, 546 U.S. at 444-46; Preston v. Ferrer, 552 U.S. 346, 353-54 (2008).  That is because [9 U.S.C.] § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" without mention of the validity of the contract in which it is contained.  Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.  "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  Buckeye, 546 U.S. at 445; see also id. at 447 (the severability rule is based on [9 U.S.C.] § 2).
>
> [561 U.S. at 70 (second and fourth alteration in original) (citations reformatted).]

15

In Buckeye, the Court explained:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.
>
> [546 U.S. at 445-46 (citations omitted).]

There is nothing in Coinbase to suggest the Court abandoned the "so-called severability principle," Coinbase, 602 U.S. at 150. On the contrary, the Court reiterated the principle. See id. at 152. Here, plaintiff has not challenged the Agreement's arbitration provision.

The Court acknowledged the argument that the so called severability principle should have applied, under which "an arbitration [or delegation] provision is severable from the remainder of the contract' and 'unless the challenge is to the arbitration [or delegation] clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Coinbase, 602 U.S. at 150 (alterations in original) (quoting Buckeye, 546 U.S. at 445-46). However, the Court stated the severability rule "does not require that a party challenge only the arbitration or delegation provision. Rather, where a challenge applies 'equally' to the whole contract and to an arbitration or delegation

provision, a court must address that challenge." <u>Id.</u> at 154 (quoting <u>Rent-A-Center</u>, 561 U.S. at 71).

We are convinced that the Court's use of the phrase "'equally' to the whole contract," was not intended to abandon the severability principle. <u>Ibid.</u> Instead, we construe the Court's holding to mean that when two contracts contain conflicting language—one allowing access to the courts and the other requiring arbitration—a court not an arbitrator must resolve the conflict through consideration of the "whole contract," meaning both contracts, rather than as suggested merely deferring to the contract that required arbitration.

Therefore, because we are satisfied <u>Coinbase</u> does not provide "new controlling authority," <u>Acuna</u>, 384 N.J. Super. at 407, the law of the case applies, and the parties were required to submit to arbitration.

<u>9 U.S.C. § 10(a)</u>

Plaintiff argues "in determining that [d]efendant had not been assigned the . . . [A]greement and did not possess the right to enforce the agreement as an assignee, the [a]rbitrator had reached the bounds of the purview of his authority" and by "continuing to exercise authority over the parties, the [a]rbitrator exceeded his powers by addressing issues beyond the scope of the parties' submission." Plaintiff relies on 9 U.S.C. § 10(a)(4) that provides a court may

17

vacate an arbitrator's award: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

We conclude there is no merit to plaintiff's argument. We addressed this argument in Williams-Hopkins II. In Williams-Hopkins II, we stated:

> The arbitrator's determination, that the lack of a perfected assignment precluded defendant from "enforc[ ing] the arbitration agreement," did not extinguish the arbitrator's authority to determine arbitrability. Instead, "[t]he Agreement states any claim 'including, but not limited to the validity, enforceability or scope of the [a]rbitration [p]rovision [or] content of the contract' shall be 'settled by binding arbitration.'" Williams-Hopkins [I], slip op. at 4. Therefore, in keeping with our prior opinion, the arbitrator was within his authority to determine whether the arbitration agreement was enforceable for other reasons.
>
> [Williams-Hopkins II, slip op. at 6-7 (second, third, fourth, and fifth alterations in original) (emphasis added).]

The time to appeal from our opinion in Williams-Hopkins II has expired. Indeed, the New Jersey Supreme Court denied plaintiff's petition for certification. See 257 N.J. 525 (2024). Therefore, the law of the case applies. See Acuna, 384 N.J. Super. at 407. To the extent plaintiff's Coinbase argument

addresses <u>Williams-Hopkins II</u>, we reject the argument here for the same reasons.

<u>Common Law</u>

Plaintiff contends the arbitration award must be vacated on common law grounds, because the arbitrator "manifestly disregarded controlling law" by erroneously applying equitable estoppel to compel arbitration, citing <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003). Plaintiff asserts the common law applies "<u>in addition</u> to the four statutory bases for vacating an arbitration award." (Emphasis added).

We conclude plaintiff's reliance on common law grounds, in addition to 9 U.S.C. § 10(a), to vacate an arbitration award is misplaced. In <u>Hall Street Associates, LLC v. Mattel, Inc.</u>, the United States Supreme Court noted "[t]he Courts of Appeals ha[d] split over the exclusiveness of the[] statutory grounds when parties take the FAA shortcut to . . . vacate . . . an award, with some saying the recitations are exclusive, and others regarding them as mere threshold provisions open to expansion . . . ." 552 U.S. 576, 583 (2008). However, after noting 9 U.S.C. § 10 addresses "extreme arbitral conduct," <u>id.</u> at 586, and provides "egregious departures from the parties' agreed-upon arbitration: 'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,'

'exceed[ing]. . . powers,' . . . [and] 'award[s] upon a matter not submitted,'" ibid. (first and third alteration in original), the Court resolved the split by holding 9 U.S.C. § 10 "provide[s] the FAA's exclusive grounds for . . . vacatur." Id. at 584. See also Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 30 (App. Div. 2023) ("Guided by the United States Supreme Court's holding in Hall St[reet] . . . , we conclude that when the FAA controls an arbitration agreement, its vacatur terms are exclusive . . . ."). Therefore, we reject plaintiff's attempt to vacate the arbitrator's order on common law grounds.

NJCFLA and Equitable Estoppel

Plaintiff contends the arbitrator erred because defendant's failure to be licensed under the NJCFLA rendered the parties' Agreement void. Further, she contends the arbitrator erred in his application of equitable estoppel to compel her submittal to arbitration. We need not consider the merits of plaintiff's contentions.

"A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 569 (2013) (second alteration in original) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)). Instead, "[b]ecause the parties 'bargained for

20

the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." Ibid. (quoting E. Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)). Therefore, "[o]nly if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions' . . . rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." Ibid. (all but first alteration in original) (quoting E. Assoc. Coal, 531 U.S. at 62). Thus, "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Ibid. "[R]eview under [9 U.S.C.] § 10 focuses on misconduct rather than mistake." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 350-51 (2011).

For the reasons stated in this opinion, we have concluded the parties were subject to arbitration regarding issues concerning "the validity, enforceability, or scope" of the Agreement's arbitration provision. Plaintiff's NJCFLA and equitable estoppel contentions go to the very issues—"validity" and "enforceability"—encompassed within the Agreement's arbitration provision. Therefore, whether the arbitrator determined those issues correctly is of no moment here because:

A-0298-24

[C]onvincing a court of an arbitrator's error—even his grave error—is not enough.  So long as the arbitrator was "arguably construing" the contract . . . a court may not correct his mistakes under [9 U.S.C.] §10(a)(4).  E. Assoc. Coal, 531 U.S. at 62 (internal quotation marks omitted).  The potential for those mistakes is the price of agreeing to arbitration.

[Oxford Health Plans, 569 U.S. at 572-73 (citation reformatted).]

Here, we conclude the arbitrator was construing the parties' Agreement and that ends the analysis.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0298-24